(No. 59157.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN J. FREY, Appellee.

*Opinion filed September 20, 1984.*

328

Neil Hartigan, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Mark L. Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Joseph R. Napoli and Arthur J. Inman, of Peoria, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Following a bench trial in the circuit court of Peoria County defendant, Brian J. Frey, was convicted of driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501) and sentenced to one year's probation conditioned upon periodic imprisonment at the Peoria County Work Release Center. A divided appellate court ordered a new trial on the ground that defendant did not knowingly waive his right to a trial by jury. (117 Ill. App. 3d 582.) We allowed the State's petition for leave to appeal (87 Ill. 2d R. 315(a)).

Defendant was originally indicted on two counts of reckless homicide stemming from an automobile accident on March 6, 1981. The indictment alleged that defendant caused the deaths of the pregnant Connie I. Updike and her 22-week-old fetus by recklessly driving his vehicle into the Updike vehicle while under the influence of intoxicating liquor. Defendant pleaded not guilty to the charges, and a jury trial was scheduled for May 11, 1981. Due to numerous continuances, however, no trial commenced until March 18, 1982.

On October 8, 1981, the court entered an order, approved by defense counsel, stating that "the defendant's attorney indicates the defendant will waive a jury trial in this case," and continued the case to November 19 at 9:30 for "Bench trial." Subsequent orders entered in the case also indicated a bench-trial status. On October 20, 1981, defense counsel filed a motion stating: "2. Defendant has waived jury trial so that the cause will be tried by the court," and requesting that the judge, "as trier of the facts," view the scene of the accident. On November 16 the case was continued by agreement to December 17 for "Bench trial." On that date the case was again continued to January 21, 1982, for a hearing on a motion to

suppress, and a bench trial was set for January 28. Following allowance of the motion to suppress, the State's Attorney, on January 27, filed an information charging defendant with driving while under the influence of intoxicating liquor. This charge also stemmed from the March 6 accident and was added to the State's case as "Count III."

It was thereafter agreed by the parties that the reckless-homicide counts would be tried before the driving-under-the-influence count since the results of two breathalyzer tests showing defendant's blood alcohol content of .16 and .15 would be admissible only in the latter. The parties also stipulated that most of the evidence presented in the reckless-homicide trial could be considered by the judge in the subsequent driving-under-the-influence trial. An order entered on March 1, 1982, shows that a bench trial of that charge was scheduled for March 18, 1982. Apparently no record was made of the discussions between court and counsel on the numerous occasions when counsel was in court prior to trial. Consequently, we do not know with certainty precisely what was said nor on which occasions defendant was present. However, the prosecuting attorney's unrebutted testimony in defendant's presence at the hearing on defendant's motion for a new trial was that defendant was present on occasions when the matter of a bench trial was discussed, and at some point was advised of his right to trial by a jury or by the court.

On the day of trial the following colloquy took place:

"THE COURT: Let the record show that this is case No. 81 CF 878, entitled the People of the State of Illinois versus Brian J. Frey, on a bill of indictment charging reckless homicide in count 1, reckless homicide in count 2 and driving while under the influence of intoxicating liquor in count 3. Count 3 is by way of information, that being a class A misdemeanor.

The record should reflect that the defendant is present in person accompanied by his attorney, Mr. Joseph Napoli. The People are present by Robert Gaubas, first assistant State's Attorney. *And these causes were set today for purposes of bench trial and the issues presented by all three counts pending against this defendant.*

Are the People ready for trial at this time?

MR. GAUBAS: The People are ready, Your Honor.

THE COURT: Mr. Napoli, is the defendant ready?

MR. NAPOLI: The defendant is ready, Judge, but I'd like to call your attention to the fact that at the last hearing, we did agree—

THE COURT: There was an agreement, the record should reflect, that first will be tried the issues presented by the two counts of the bill of indictment, charging reckless homicide. Following a determination on those two counts, it was the intention of the parties, I believe, to try the issues presented by the count brought by way of information, driving while under the influence of intoxicating liquor.

Is that not the agreement of the parties?

MR. NAPOLI: It is, sir, as far as the defendant is concerned.

THE COURT: Mr. Gaubas:

MR. GAUBAS: That's correct.

THE COURT: Are there any other matters to bring to the court's attention before we commence with the trial on the issues presented by counts 1 and 2 of the bill of indictment? Mr. Gaubas?

MR. GAUBAS: No, Judge.

THE COURT: Mr. Napoli?

MR. NAPOLI: No, sir." (Emphasis added.)

A bench trial then followed and defendant was acquitted of the reckless-homicide charges. A bench trial on the driving-under-the-influence count the next day resulted in the conviction now in question.

As noted, the appellate court ordered a new trial because it did not believe the record supported a finding that defendant either implicitly or explicitly waived a jury trial

on the driving-under-the-influence charge. We disagree and now reverse.

It is generally understood that a jury waiver, to be valid, must be knowingly and understandingly made. (Ill. Rev. Stat. 1981, ch. 38, par. 103—6; *People v. Steenbergen* (1964), 31 Ill. 2d 615, 617; *People v. Surgeon* (1958), 15 Ill. 2d 236, 238; *People v. Turner* (1982), 111 Ill. App. 3d 358, 369; *People v. Brownstein* (1982), 105 Ill. App. 3d 459, 462.) That determination cannot rest on any precise formula and necessarily turns on the facts and circumstances of each particular case. (*Adams v. United States ex rel. McCann* (1942), 317 U.S. 269, 278, 87 L. Ed. 268, 274, 63 S. Ct. 236, 241; *People v. Wesley* (1964), 30 Ill. 2d 131, 133; *United States ex rel. Williams v. DeRobertis* (7th Cir., 1983), 715 F.2d 1174, 1179; *People v. Turner* (1982), 111 Ill. App. 3d 358, 369.) Recognizing that the accused typically speaks and acts through his attorney, we have given effect to jury waivers made by defense counsel in defendant's presence where defendant gave no indication of any objection to the court hearing the case. (*People v. Murrell* (1975), 60 Ill. 2d 287, 290; *People v. Sailor* (1969), 43 Ill. 2d 256, 260; *People v. Novotny* (1968), 41 Ill. 2d 401; see also *People v. Rynberk* (1980), 92 Ill. App. 3d 112, 118; *People v. Spain* (1980), 91 Ill. App. 3d 900, 906.) In *Murrell* and *Sailor,* for instance, defense counsel's single statement that defendant was waiving a jury was held to constitute a valid waiver since defendant was present in the courtroom and failed to object. We have not required that the record affirmatively establish that the court advised defendant of his right to a jury trial and elicited his waiver of that right (*Murrell*), nor that the court or counsel advised defendant of the consequences of the waiver. *Murrell; People v. Richardson* (1965), 32 Ill. 2d 497, 500; *People v. Nelson* (1959), 17 Ill. 2d 509, 511.

It is entirely clear from this record that both court and counsel had understood after October 8, 1981, that the

case would be heard without a jury. Although the driving-under-the-influence charge was not filed until January 27, 1982, the March 1 order set a bench trial on that charge for March 18, and defense counsel's willingness to stipulate in that case to the use of evidence presented to the judge on the reckless-homicide charges further reflects counsel's intent to try the case before the court. It also appears from the record that defendant was aware of his right to a jury trial and was present at some point prior to trial when the jury waiver was discussed. Too, we are not dealing with an unsophisticated, uneducated or simple-minded defendant to whom those discussions might be unclear, for the trial court described defendant as a real estate syndicator and developer, and a man of intelligence, experience and considerable education. The choice of a bench trial in a case where the emotional factors favor the prosecution is a natural and logical strategy. When these facts are considered with defendant's silent acquiescence in the judge's statement in his presence on the day of trial that all counts were set for bench trial, we can only conclude that the jury waiver was made with defendant's knowledge and consent.

To affirm the judgment of the appellate court under such circumstances would, in the words of the trial judge, "give credence to what could be described as a fraud upon the court." We will not permit the accused " '*** to gamble on the outcome before the judge without a jury and then if dissatisfied make a belated demand for a jury.' " (*People v. Novotny* (1968), 41 Ill. 2d 401, 409.) We accordingly hold that defendant's jury waiver was valid. The judgment of the appellate court is reversed, and the judgment of the circuit court of Peoria County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*