In 1983, Clifford Merrill Boatwright was convicted, in a trial without a jury, for trafficking in marijuana and for possession of marijuana. He was sentenced to nine years' imprisonment and fined $25,000. This court affirmed that conviction in Boatwrightv. State, 438 So.2d 769 (Ala.Cr.App. 1983). In 1984, Boatwright filed a petition for writ of error coram nobis alleging "(1) that he was denied the effective assistance of counsel at trial and on appeal of his conviction for trafficking in marijuana; (2) that his trial counsel had a conflict of interest and (3) that he did not knowingly and intelligently waive his right to trial by jury." The petition was denied without an evidentiary hearing and the denial was affirmed by this court in Boatwright v. State,471 So.2d 1255 (Ala.Cr.App. 1984). The Alabama Supreme Court reversed the decision and remanded the cause for an evidentiary hearing inEx parte Boatwright, 471 So.2d 1257 (Ala. 1985). Following a hearing, the trial judge again denied the petition. This appeal is from that denial.
Abandoning the earlier argument that his trial counsel had a conflict of interest, Boatwright now reasserts his claim that his trial and appellate attorneys were ineffective, but he alleges that they were inadequate on grounds different from those asserted in his petition. He also claims once again that his lawyers did not explain to him his right to trial by jury and maintains that he did not voluntarily waive that right.
 I
Although Boatwright does not advance the conflict of interest issue on appeal, see Rule 45B, A.R.A.P., we, nevertheless, specifically uphold the trial court's order denying the petition on that ground.
At the evidentiary hearing, Glen Sexton, another defendant charged with a drug offense and also represented by attorney Louis Wilkinson, testified as follows:
 "Q Did you and Mr. Wilkinson have any discussions about a possible deal that could be made in Marshall County?
"A No, sir.
 "Q Did you have any discussion about Merrill Boatwright?
"A Well, yeah.
 "Q Tell us what that conversation with Mr. Wilkinson about Mr. Boatwright was.
 "A He told me that the District Attorney up there said that he would trade me for the red headed son of a bitch in Gadsden.
 "Q Do you know to whom he was referring when he said `red headed son of a bitch from Gadsden?'
"A I assume it was Merrill.
 "MISS JONES [Assistant District Attorney]: I'm going to object if it's an assumption, Judge. If he doesn't know —
"THE COURT: Yes, I sustain as to the assumption.
 "Q Mr. Sexton, did you take that to mean Merrill Boatwright?
"MISS JONES: Now, —
"A Yes, sir. *Page 932 
"Q Did the name Merrill Boatwright come up?
"A Not at that time.
 "Q During the time that Mr. Wilkinson was representing you you were aware that something might benefit by your providing some information on Mr. Boatwright, were you not? Whether you did or not, you knew that might help you?
"A Yes, sir.
 "Q Mr. Sexton, in relation — are you aware that Mr. Boatwright was tried and convicted up here or down here in Etowah County around the same time?
"A Yes, sir.
". . . .
 "Q Mr. Sexton, did you provide any information on Mr. Boatwright?
"A No, sir."
Attorney Louis Wilkinson's testimony refuted Sexton's charges:
 "Q Mr. Wilkinson, in your representation of Glen Sexton did you not have a discussion with Mr. Sexton about something that the D.A. in Marshall County had said about possibly trading him for some information on Merrill Boatwright?
"A No, sir.
"Q What disposition was made of Mr. Sexton's case?
 "A Mr. Sexton, as I recollect it, got a split sentence, 3 months to serve, 5 years probation, something like that.
 "Q And you don't remember having a discussion with Mr. Sexton about Mr. Boatwright?
 "A No, I don't remember having a discussion with Mr. Sexton about Mr. Boatwright and I deny having a discussion with Mr. Starnes about trading anybody for anybody.
"Q What about with Mr. Sexton?
"A Trading somebody for somebody?
 "Q Yes, what kind of negotiations did you engage in to get Mr. Sexton the split sentence?
 "Q Well, Mr. Sexton, as I recollect it, had no record whatever except for a good affirmative work record. The State had a problem because the informer — or their witness, let me put it that way — against Mr. Sexton was a guy named Norton, as I recollect it, and he had an atrocious record. And the State was not too took up with using him for a witness against Sexton. All of those factors taken into consideration, and I think they were major factors, they offered the settlement and we took it."
In addition, the trial judge noted that it was not altogether clear that Wilkinson represented Sexton and Boatwright at the same time, and he observed that because the two defendants were charged in separate counties, Sexton's version of an offered "trade" was all the more suspect.
The petitioner bears the burden of proof in a coram nobis proceeding. Robinson v. State, 419 So.2d 283 (Ala.Cr.App. 1982). "[W]here conflicting evidence is presented at a hearing on a petition for writ of error coram nobis, the trial judge must `believe' the evidence offered by the petitioner before he will be justified in granting relief." Howton v. State, 432 So.2d 548,550 (Ala.Cr.App. 1983) (quoting Seibert v. State, 343 So.2d 788,790 (Ala. 1977). A review of the transcript demonstrates that the trial judge's finding that Boatwright did not prove his conflict of interest allegation is supported by the record. See Hayes v.State, 417 So.2d 579 (Ala.Cr.App. 1982).
 II
Boatwright next contends that his waiver of a jury trial was involuntary and his lawyers were ineffective for failing to ascertain that fact.
The alleged invalidity of Boatwright's waiver is a matter of which Boatwright was aware or should have been aware at trial,see Spradley v. State, 414 So.2d 170, 172 (Ala.Cr.App. 1982), but which was not urged at trial or on appeal, and it is, therefore, not cognizable under the writ of error coram nobis, see Holsclawv. State, 429 So.2d 1185 (Ala.Cr.App. 1983).
Furthermore, Boatwright's allegation that counsel were ineffective for failing *Page 933 
to determine the voluntariness of his waiver does not satisfy the requirement of "prejudice" set out in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Boatwright did not allege in his petition that, had counsel been effective, he would not have agreed to a bench trial but would have insisted on a trial by jury. Compare Smith v. State, 488 So.2d 19
(Ala.Cr.App. 1986) (petitioner failed to allege that but for counsel's inadequacy, he would not have pled guilty).
Nevertheless, even assuming that Boatwright's waiver and ineffectiveness claims are not procedurally barred, he has not satisfied his burden of proof. "A defendant charged with a non-capital felony may waive a jury trial with the consent of the State and the trial court provided the waiver is made knowingly, voluntarily, and intelligently in light of all the surrounding circumstances." Spradley v. State, 414 So.2d at 172; Junior v.State, 375 So.2d 556, 557 (Ala.Cr.App. 1979). A colloquy of the type required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), for a plea of guilty is neither necessary nor mandated, Murphy v. State, 347 So.2d 1369 (Ala.Cr.App.),cert. denied, 347 So.2d 1371 (1977). See also United States exrel. Williams v. DeRobertis, 715 F.2d 1174 (7th Cir. 1983), cert.denied, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984);People v. Frey, 103 Ill.2d 327, 82 Ill.Dec. 661, 469 N.E.2d 195
(1984). The burden of establishing an invalid waiver of trial by jury rests on the party asserting the invalidity. Adams v. UnitedStates ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242,87 L.Ed. 268 (1942).
In statements to the authorities, Boatwright admitted the presence and ownership of nine pounds of marijuana in his automobile. At trial, the only issue was a purely legal one, the validity of the search of his vehicle and the seizure of the drugs. Defense counsel moved to suppress the evidence and challenged its admissibility in arguments to the court on the ground that the police did not have probable cause to search Boatwright's vehicle. Counsel claimed that, because the tip on which the police were acting did not disclose the basis of the informant's knowledge, it could not provide probable cause underAguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
(1964), and Spinelli v. United States, 393 U.S. 410,89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
At the coram nobis hearing, co-counsel Rowan Bone testified:
 "Louis [Wilkinson] was of the opinion that unless he could successfully beat the search that there was going to be a conviction. And, as I recall, there was quite a — quite a bit of marijuana in the trunk of the car, I think. I don't remember the quantity but it was quite a bit. And Louis was of the opinion, and I agreed with him, that if it went to the jury there would be a conviction because of the amount." (R. 14).
Louis Wilkinson testified:
 "[T]here was no factual question whatever, as I remember the fact situation. After Mr. Boatwright was arrested he acknowledged that the drugs were his, et cetera, et cetera, et cetera, and that the only real question was the technical one, the search and seizure question, the potential Fourth Amendment question." (R. 23)
Defense counsel's conclusions that, if the motion to suppress were unsuccessful, the large amount of marijuana seized and Boatwright's admission of ownership of it would result in a conviction are "natural and logical strategy" reasons for choosing a bench trial. See People v. Frey, 103 Ill.2d 327, 82 Ill.Dec. 661, 663, 469 N.E.2d 195, 197 (1984). Under the circumstances, defense counsel's advice to Boatwright that he waive his right to a trial by jury was reasonable. CompareAlexander v. State, 462 So.2d 955 (Ala.Cr.App. 1984) (counsel's advice to plead guilty was sound under the circumstances).
Boatwright's allegation that "counsel did not render competent assistance . . . in advising him concerning the waiver of a trial by jury," because his lawyers did not *Page 934 
"ascertain that he knowingly and voluntarily waived a trial by jury," (appellant's brief pp. 10 and 13), is not supported by the record. Although Mr. Rowan Bone testified that he did not "recall anything being, you know, really put to — to Merrill [Boatwright] about whether or not he wanted the jury trial," and that he was "not too sure that Merrill recognized the significance of it [the waiver of a jury trial]", he conceded that he had been associated by Mr. Wilkinson "simply because [he] was local," and Mr. Wilkinson was the "lead counsel of the two." Mr. Wilkinson testified as follows:
 "Q Do you remember having that conversation with Mr. Boatwright at that time?
"A Yes, I think so.
 "Q Okay. Can you relate to the Court the substance of that conversation regarding the waiver of the right to a trial by jury?
 "A Yes, as I recollect the — the upshot of the conversation — it's been a long time ago — but the upshot of it was that there was no factual question whatever, as I remember the fact situation. After Mr. Boatwright was arrested he acknowledged that the drugs were his, et cetera, et cetera, et cetera, and that the only real question was the technical one, the search and seizure question, the potential Fourth Amendment question. And that I thought we would get — or focus more attention, if you will, on that by a waiver of the jury trial the fact he was on probation. I thought it might benefit him if we eliminated an unnecessary phase of the trial, a really unnecessary phase of the trial and try the case without a jury.
"Q Did you explain all this —
"A Oh, yes.
"Q — to him?
"A Oh, yes. Yes. Yes.
 "Q And did he appear to you to understand what you were telling him?
"A Surely.
 "Do you remember also after that discussion coming back into court and the Court addressing the question to Mr. Boatwright.
"A Right.
 "Q — whether he knew what he was doing by waiving the right to trial by jury?
 "A Oh, yes. Yes. As I remember, everyone was appropriately concerned about the fact and, of course, I guess the Court didn't know what the facts would turn in to be but was concerned about the waiver of trial by jury to make sure everybody knew what they were doing, yes.
 "Q We had in effect on the — submitted all the evidence — the State had in fact submitted all the evidence to the Defense —
"A Yes.
"Q — through the Suppression Hearing, had we not?
"A Oh, yes. Yes. Yes.
 "Q Okay. So there would have been no surprises had you gone to trial? You knew what we were going to put on?
"A Oh, yes. Yes. Yes.
 "Q Okay. And at that point you felt that that was a case that would be won by the State if we went to a jury trial?
 "A Unquestionably, based on information I had from the State and from the defendant, yes."
The trial transcript reveals that the following occurred:
 "MR. WILKINSON: If you agree, we might be able to write briefs for the Court and submit to the Court and let that be the alternative on the question and let it go from there because I think it's strictly a legal question, quite honestly.
 "MR. BONE: One other thing I would like to point out —
 "THE COURT: Well, now, are y'all saying in effect, that you would waive your trial by jury on my determination.
 "MR. WILKINSON: If Mr. Bone agrees, I would be willing to submit it to the Court on — what do you think? *Page 935 
 "(Whereupon, there was an off the record discussion, after which, the following occurred:)
 "MR. BONE: I think we had better have a conference with Mr. Boatwright.
"MR. WILKINSON: Okay.
"THE COURT: Sure.
". . . .
 "(Whereupon, there was a short recess taken, after which, the following occurred:)
". . . .
 "MR. WILKINSON:. . . . Judge, Mr. Boatwright would state for the record, and we would ask him to do so, pending the Court's approval, and if there is no objection by the State, it's our feeling — Mr. Bone and I have discussed it with the defendant. It is our feeling that this whole issue, really, turns on the Court's determination as to whether or not there is a legal search and seizure of the automobile. Okay. We would ask the Court to take the matter under advisement based on the testimony it has before it, give us an opportunity to brief the matter and submit it to the Court, set it for a date certain for finding of innocence or guilt, depending on the Court's determination.
". . . .
 "THE COURT: Okay. You will continue under the same bond, Mr. Boatwright.
"MR. BOATWRIGHT: Yes, sir.
 "THE COURT: In effect you are waiving a right to trial by jury and this will be the —
"MR. WILKINSON: Yes, sir, that is correct.
 "THE COURT: Now, you are the Defendant. This is your request and you are waiving your right to trial by jury.
"MR. BOATWRIGHT: Yes, sir.
"THE COURT: All right."
At the evidentiary hearing, Boatwright did not even testify that his waiver was involuntary. The allegations in his petition that counsel did not ascertain that Boatwright knew what he was doing by agreeing to a bench trial are contradicted by Mr. Wilkinson's testimony that he outlined the situation for Boatwright and Boatwright appeared to understand the implications of having his case decided by the trial judge. Boatwright's allegations of involuntariness are contradicted by his own affirmative answer to the court's inquiry, on the trial record, whether he wished to waive his right to a jury trial. CompareHolsclaw v. State, supra (allegations of petition not sufficient to overcome presumption of correctness of jury waiver form). As we said in Holsclaw v. State:
 "In considering a petition for writ of error coram nobis, a court may and should determine the `reasonableness of the allegations made in the petition and the probability or improbability of their truth.' A court is not bound to accept at face value the allegations of the petition.
". . . .
 "In this case, the trial judge could very properly have found that the petition is `based upon assertions of alleged facts, which have originated in the fertile mind of [a] cunning criminal.'" 429 So.2d 1185, 1187-88. (Citations omitted.)
 III
Boatwright's final claim on this appeal concerns the ineffectiveness of both trial and appellate counsel due to their failure to raise the alleged unlawfulness of his custodial interrogation under Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
This ground was not alleged in his coram nobis petition and not urged at the evidentiary hearing. The petition must contain the grounds upon which the petitioner bases his claim for relief.Stephens v. State, 420 So.2d 826, 828 (Ala.Cr.App. 1982). If a petitioner may not assert, as grounds for coram nobis, facts he knew or should have known at trial, and claims he could have asserted on appeal, then certainly he may not raise in brief on appeal from denial of a petition matters which he did not even allege in his petition. See McLeod v. State, 415 So.2d 1232
(Ala.Cr.App. 1982). *Page 936 
The order of the circuit court is affirmed.
AFFIRMED.
All Judges concur.