Kenneth Earl Magwood was convicted of capital murder, § 13A-5-31(a)(2), Code of Alabama 1975, in 1982. He was sentenced to death. In 1985, his conviction and sentence were affirmed by this court in Magwood v. State, 494 So.2d 124 (Ala.Cr.App. 1985). The Alabama Supreme Court also affirmed his conviction and death sentence in Ex parte Magwood, 494 So.2d 154 (Ala. 1986). The United States Supreme Court denied Magwood's petition for a writ of certiorari. Magwood v. Alabama,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
In February 1987, Magwood petitioned for a writ of error coram nobis. In May, an evidentiary hearing was held on the ineffective assistance of counsel claim in the coram nobis petition, and relief was denied in June 1987. This case was submitted to us in April 1988. Magwood's ineffective assistance of counsel claim has two aspects. First, he contends that his counsel should have objected to the prosecution's striking black potential jurors and should have attempted to "supplement the record" on petition for certiorari by showing who the black potential jurors were and how many there were and which jurors were struck. Failure to request these things during the pendency of the petition for writ of certiorari, he argues, constituted ineffective assistance of counsel. Second, he contends that counsel at the trial should have offered evidence regarding the racial composition of the jury venire and statistical evidence concerning it. He argues that failure to do this constituted ineffective assistance. He also alleges a denial of his sixth amendment right to a jury drawn from a fair cross-section of the community. While the trial in this case was held in September 1982, the case was still pending on petition for writ of certiorari at the time of the United States Supreme Court's decision in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
 I
The Circuit Court for Houston County made the following findings of fact from the initial trial of this case:
"FINDINGS OF FACT FROM THE TRIAL
 "The Court makes the following findings of fact from the testimony and evidence presented at the trial:
 "On April 10, 1981, at approximately 7:30 p.m., two employees of the Southern Railroad Company, Danny Pelham and Jimmy Carroll, found train engineer, Eugene L. Norris, also an employee of the Southern Railroad Company and a member of their three man crew, lying in a pool of blood in the cab of one of the three engines on their train. The victim's *Page 637 
left hip pocket appeared to have been pulled out as if his billfold or something in his pocket had been removed.
 "Pelham, Carroll, and the victim, Eugene L. Norris, had previously taken the train engines to Dothan Seed and Feed Company in Dothan, Houston County, Alabama, where they began switching cars. They had completed the switching and were proceeding East on the tracks with three engines pushing the approximately 22 train cars toward the Plant Street intersection. As they began to proceed engineer Norris blew the engine whistle. The section of track they were on had a 5 mile per hour speed limit. The train started out at a slow speed and all of a sudden began to increase speed. As they were approaching the Plant Street crossing Pelham attempted to give directions by radio to Norris to slow his speed. The train kept increasing speed and reached a speed of approximately 25-30 miles per hour. Pelham then threw an emergency switch at his and Carroll's end of the train causing the train to stop. Carroll and Pelham then ran back to the engine where they found Norris lying in the cab.
 "The victim's billfold was found by law enforcement officers behind Dothan Seed and Feed. Its contents were strewn. No money was present. A loaded shotgun shell was found between the tracks.
 "A witness had observed a black male walking toward the railroad track earlier that afternoon carrying a shotgun and identified him as Kenneth Earl Magwood. Magwood was thereafter located at Newsome's Drive-In in Dothan, Alabama, taken into custody, advised of his constitutional rights, and a shotgun shell was found on his person.
 "Magwood was subsequently questioned and gave a statement admitting to shooting Eugene L. Norris and taking his billfold. Magwood stated that he and Norris had been having some arguments concerning Magwood's being on the tracks. Magwood stated that he had taken the gun to shoot rabbits and that as he approached the engine he and Norris got into another argument. Magwood stated that Norris had called him a name, that he had gotten onto the engine, that they had gotten into a scuffle, and that the shotgun went off killing Norris. Magwood stated that he took Norris' billfold, jumped from the train, ran down the tracks, and threw the billfold and shotgun away.
 "The next day Magwood was taken to the scene where he directed police officers to the shotgun. The shotgun was found to have one fired 12 gauge round in it.
 "An autopsy was performed on the body of Eugene L. Norris. A shotgun entrance wound was found on the left back side of the neck. Cause of death was a shotgun wound to the neck, with the path of the shot charge being mainly left to right, front to back, and slightly upward. The muzzle of the gun was approximately three to five feet from the victim at the time of the discharge.
 "The jury having found the Defendant so guilty, it is the finding of this Court that the Defendant, Kenneth Earl Magwood, intentionally killed Eugene L. Norris in the course of robbing Eugene L. Norris." Magwood v. State, 494 So.2d 124, 152-53 (Ala.Cr.App. 1985).
The first witness for the petitioner on this coram nobis hearing was Eva Ansley. She testified to having examined the records in the office of the circuit clerk for Houston County. She testified that in this case, 110 people had been summoned for jury duty that week. Ninety-seven of the summoned jurors were white and 13 were black. Of the 110 summoned jurors, 60 were available to strike from at Magwood's trial. Of those 60 venire members, 3 were black. The prosecution struck the three black venire members, according to Ansley's testimony. According to the Alabama County Data Book (1985), in 1983, 23.1% of the population of Houston County was non-white.
The next witness summoned was the Honorable Julia Trant, circuit clerk. She testified that she was the custodian of the records of the Houston Circuit Court, and she identified the strike list from the Magwood *Page 638 
case. She stated that the jurors were summoned by computer from Montgomery after a request was made for jurors by the presiding judge of the Circuit Court for Houston County.
The petitioner's other witness was his trial attorney, John M. Gruenewald. Mr. Gruenewald testified that, while he filed a pretrial motion challenging the composition of the jury, it was, in fact, a challenge to the composition of the jury roll based on a purported under-representation of young adults, women, and blacks. He said that he did not object at trial to the prosecution's peremptory strikes of black venire members. He testified that he did not object because, at the time of trial, he understood "that the state had pretty much unbridled discretion in who the state struck." He said that he was aware that constitutional challenges to the use of peremptory strikes by the state in previous cases had been unsuccessful. He considered further objections to be futile under the law as it then stood. He testified that he was not so much concerned with possible future changes in the law as he was with getting the best jury he could for his client Magwood.
On cross-examination, Mr. Gruenewald testified that he was admitted to practice in 1973. He had been an assistant attorney general and then chief assistant district attorney in Houston County before entering private practice in 1977. He testified that he had participated in "quite a few" felony trials, both as a prosecutor and as a defense attorney, and that at the time of Magwood's trial, his practice was approximately 35% criminal defense practice. He further testified that he had met with Magwood numerous times and had interviewed both defense and prosecution witnesses. He had also used materials furnished by the Southern Proverty Law Center concerning motions in the sentencing stage of the trial in particular.
The yardstick by which performance of counsel is measured was laid down in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant who challenges the caliber of his lawyer's representation has the burden of proving that he was denied effective assistance of counsel. The Supreme Court, in that case, announced this two-part test:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. at 687, 104 S.Ct. at 2064.
In essence, Magwood's contention is that his lawyer, trying his case in September 1982, should have attempted to put into the official record matter which might have proven useful to him pursuant to a case, Batson v. Kentucky, which was decided four years later. In 1982, the law was set out by Swain v.Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Swain established a rule which prevailed from 1965 until the decision in Batson in 1986. Magwood's trial lawyer, a very experienced criminal defense attorney, was familiar with the law. Was his assistance ineffective because he did not foresee the Batson decision? In his brief, Magwood admits that the United States Supreme Court decision in Batson represented "a marked change in the law. . . ."
This argument has failed in other cases. In Elledge v.Dugger, 823 F.2d 1439, 1443, modified on other grounds,833 F.2d 250 (11th Cir. 1987), the court held that an attorney is not required to "make arguments based on predictions as to how the law may develop." To the same effect is Procter v. Butler,831 F.2d 1251 (5th Cir. 1987), in which the court held that in a pre-Batson trial, a trial lawyer's performance was not deficient simply because he did not raise a Batson objection. In Horsley v. State, 527 So.2d 1355 (Ala.Cr.App. 1988), this court affirmed *Page 639 
a circuit court ruling that lawyers in a pre-Batson trial did not render ineffective assistance in failing to object to the prosecution's peremptory strikes of black venire members. This court stated further:
 " '[T]he failure by counsel in a capital case to raise any particular claim or claims does not per se fall below an objective standard of reasonableness.' Lindsey v. Smith, 820 F.2d 1137, 1144 (11th Cir. 1987). Batson was a 'clear break' with past precedent. Allen [v. Hardy], 478 U.S. at 255, 106 S.Ct. at 2878, [92 L.Ed.2d 199 (1986)]. 'A reviewing court must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.' Blackburn v. Foltz, 828 F.2d 1177, 1180 (6th Cir. 1987). The circuit court correctly found that neither trial nor appellate counsel were ineffective in failing to raise the Batson issue." Horsley, at 1359.
In Poole v. United States, 832 F.2d 561 (11th Cir. 1987), the Eleventh Circuit again rejected such a claim, remarking that "[t]he problem with faulting the public defender for failing to raise a Batson objection is that Batson had not been decided yet." Id., at 565.
Magwood contends that a Batson claim should have been raised on rehearing before the Alabama Supreme Court. He argues that that court would have considered the issue if his counsel had "supplemented" the record. He reasons that if a claim had been so raised, a hearing might have been obtained. The trial record does not support the contention that there would have been aBatson issue, and we can do no more than speculate on the outcome. The record proper does not include the data which Magwood now contends might have given him an issue.
Based on what a supplemental record might show, we cannot conclude that the second prong of Strickland would have been met. We cannot conclude that the outcome would have been different.
Based on this record, there is no Batson issue presented. It is clear that under the rule of the Swain case, counsel's performance was not ineffective. The case was on rehearing before the Alabama Supreme Court. Should counsel, at that point, have asked to supplement the record? Part of the record that was omitted is the only thing that could have been added to the record. There was a later effort to secure from the clerk's office data that were not part of the record proper. Under the most liberal reading of the word "record," it is extremely doubtful that the data concerning the racial makeup of the venire and the race of the jurors struck could be considered part of the record. Even if these data were considered to be part of the record, this does not mean that there was a Batson violation.
Indeed, in Ex parte Watkins, 509 So.2d 1074 (Ala.), cert. denied, Watkins v. Alabama, 484 U.S. 918, 108 S.Ct. 269,98 L.Ed.2d 226 (1987), the Alabama Supreme Court refused to remand a capital case for a Batson hearing where the record showed the accused was black but did not show the prosecution had used its peremptory strikes to remove black venire members. The court stated:
 "Because this issue is raised for the first time on appeal, the defendant has requested that we review the record under our plain error rule, Rule 39(k), Ala.R.App.P., and remand for further proceedings, as we did in Jackson [v. State, 516 So.2d 768 (Ala. 1986)]. However, we have carefully reviewed the record in this respect and we cannot find any plain error. Although the record does show that the defendant is black and the victim was white, it does not show that the state exercised any of its peremptory challenges to remove prospective black jurors from the venire. The record as a whole simply does not raise an inference that the state was engaged in the practice of purposeful discrimination. Under the plain error rule this Court will 'notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action *Page 640 
by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner.' (Emphasis added.) Rule 39(k), supra. The defendant cannot successfully argue that error is plain in the record when there is no indication in the record that the act upon which error is predicated ever occurred (i.e., the state's use of its peremptory challenges to exclude blacks). In both Jackson and [Ex Parte] Godbolt
[546 So.2d 991 (Ala. 1987)] the records were sufficient to show that prima facie cases of purposeful discrimination could be made by the defendants; therefore, those cases were remanded for determinations on the issue under the guidelines set out in Batson." Watkins, at 1076-77.
The same result would have obtained in Magwood's case. We find that Magwood has failed to prove that he was denied effective assistance of counsel at trial.
 II
Appellant Magwood contends at pages 29 through 31 of his brief that his trial counsel rendered ineffective assistance because additional evidence could have been presented in support of the motion challenging the racial composition of the jury venire. This claim was not presented at the hearing on his coram nobis petition in the circuit court. The appellant is not entitled to relief on this claim. The conduct of counsel does not make ineffectiveness of counsel because (1) it did not fall below the normal standard, and (2) there is not any real evidence that Magwood was prejudiced by the events as they occurred. This issue was presented by a motion before trial but was not raised on appeal. Coram nobis does not lie to review the claims that were raised at trial but not pursued on direct appeal. See, Dunkins v. State, 489 So.2d 603, 611-12
(Ala.Cr.App. 1985), and Summers v. State, 366 So.2d 336, 340
(Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). The issue was not presented to the trial court by the coram nobis petition. For a claim for relief to be considered on the appeal of a coram nobis petition, it has first to be raised in the petition itself. See, Jackson v. State, 501 So.2d 542, 544
(Ala.Cr.App. 1986), cert. denied, 483 U.S. 1010,107 S.Ct. 3242, 97 L.Ed.2d 746 (1987); Boatwright v. State, 494 So.2d 929
(Ala.Cr.App. 1986). In Boatwright, we stated:
 "The petition must contain the grounds upon which the petitioner bases his claims for relief. Stephens v. State, 420 So.2d 826, 828 (Ala.Cr.App. 1982). If a petitioner may not assert, as grounds for coram nobis, facts he knew or should have known at trial, and claims he could have asserted on appeal, then certainly he may not raise in brief on appeal from denial of a petition matters which he did not even allege in his petition. See, McLeod v. State, 415 So.2d 1232 (Ala.Cr.App. 1982)."
We affirm the circuit court's denial of the coram nobis petition.
AFFIRMED.
All the Judges concur.