THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEVESTER BOWMAN, Defendant-Appellant.

First District (6th Division)   No. 1—89—3136

Opinion filed March 20, 1992.

608

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, Levester Bowman, was convicted of delivery of a controlled substance, phencyclidine (PCP), and was sentenced to a three-year term to be followed by two years of supervision. He contends that he was denied effective assistance of counsel; that he did not knowingly waive his right to a jury trial; and that various trial errors occurred. He does not contend that he was not proved guilty beyond a reasonable doubt.

Chicago police officer Sandra Cunningham was assigned to the Street Narcotics Impact Program. Her duties involved purchasing narcotics in an undercover capacity and acting as a surveillance officer when other officers were making a narcotics buy. Under the general procedure, when a buy was made one officer would make the buy and others would hide out and watch.

Cunningham testified that on January 11, 1989, she met with Officers Struska, Littleton, and Ryan and Sergeant Malloy. After their meeting she drove in her undercover vehicle to 5925 South Wentworth in Chicago. Before she drove to that location, she checked her car for contraband, as she routinely did, and found nothing. Upon arriving at 5925 South Wentworth, she saw the defendant standing around the El tracks, and she put her fingers to her mouth as if she were smoking a cigarette. She knew the defendant; she had made a purchase of PCP from him in June 1988 at the same location. The defendant then approached the car on the passenger side.

She asked the defendant if he had any "Sherm Sticks," which is the slang term for cigarettes which have been dipped into PCP. The defendant asked her how many packages she needed, and when she said, "One," he pulled out one package from a vinyl bag he was carrying. She then told the defendant to put the package on the seat; she could smell the PCP, and she did not want to get the substance on her hands. The defendant put the package on the passenger seat, and Cunningham gave him $10 which was marked with Cunningham's first initial. The defendant said he would be around later that day, and Cunningham then drove to a prearranged location at 57th and Wentworth to meet with the surveillance officers. She told the other officers about the purchase, showed them the "Sherm Stick" and had the package inventoried and sent to the Chicago police department crime laboratory to be analyzed. She did not arrest the defendant. She made an in-court identification of the defendant, and described him as having "Jheri" curls at the time of the sale. Shortly after the purchase of PCP from the defendant in June 1988, Cunningham learned the defendant's name, address and date of birth and saw a photograph of him.

It was stipulated that the chemical analysis of the "Sherm Stick" disclosed PCP. The defense called Officer Gary Struska, who was one of the surveillance officers. He testified that he and his partner, Kevin Ryan, were at 59th and Wentworth at approximately 1 p.m. They were watching the corner of 59th and Wentworth from an overpass on 59th Street in an unmarked squad car. From their position, Struska saw the defendant standing by the tracks and observed that there were a bunch of other people on the corner. Struska and his partner were double-parked for approximately 15 minutes when they observed Cunningham pull up 200 feet away. The defendant approached Cunningham's car at 5925 Wentworth from the passenger side. The defendant had a short conversation with her, reached inside the car and then walked away. The transaction took less than one

minute. Struska and Ryan then drove to the prearranged location to meet the other officers at 57th and Wentworth. After Cunningham showed Struska the package she bought from the defendant, which he determined was adulterated PCP, they went to the station to do the paperwork. The prearranged location at the intersection of 57th and Wentworth is two blocks from the site of the alleged buy and may be observed from the buy site.

After Struska testified, the defendant's attorney informed the judge that he wanted the opportunity to present some witnesses to testify that the defendant was not at 59th and Wentworth at the time Cunningham had testified he was. The judge informed the defendant of his absolute right to testify or not, and the hearing was continued to the following day in order to allow the defendant to bring in his witness. When the defendant's alibi witness, Andre King, failed to show up the following day, the defendant testified.

The defendant said that on January 11, 1989, at 1 p.m. he was in a car on his way to work. He was employed at the McDonald's in Des Plaines, and his boss, Andre King, picked him up at the Amoco gas station on 59th and Wentworth to drive him to work. King routinely gave the defendant rides to and from work. He said that he had never seen the package containing the "Sherm Stick" before and did not know what a "Sherm Stick" was. He said he had never seen Officer Cunningham before. He was not arrested on January 11, 1989, but he did receive a letter in the mail telling him to report to the presiding judge of the criminal court. He was never placed in a lineup, and he denied having ever delivered a controlled substance to any police officer.

On cross-examination he denied starting work at 5 p.m. on January 11, 1989, even though that was the time he was supposed to start. He admitted being aware of the fact that his employment records showed that he punched in at 5 p.m., but he said he punched in early that day. He said that sometimes he would go to work early and then ask to punch in early so that he could make extra money.

Following the defendant's testimony, Andre King was still absent. The defendant asked for a continuance, which the judge agreed to give, but the defendant then rested his case. He was found guilty, and his motion for a new trial was denied.

The defendant first contends that he did not knowingly waive his right to a jury trial because there was no attempt made by the judge to explain the difference between a jury trial and a bench trial. The determination of whether a defendant has knowingly waived his right to a jury trial cannot rest on any precise formula and necessar-

ily turns on the facts and circumstances of each case. (*People v. Frey* (1984), 103 Ill. 2d 327, 469 N.E.2d 195.) Recognizing that a defendant typically speaks and acts through his attorney, reviewing courts have accepted the validity of jury waivers made by defense counsel in the presence of the defendant where the defendant gave no indication of any objection to the trial judge hearing the case. (*People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762; *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397.) In *Murrell* and *Sailor*, the defense attorney's single statement that the defendant was waiving a jury was held to constitute a valid waiver since the defendant was present and failed to object.

■ In the case before us, the trial judge determined that the defendant had waived his right to a jury trial based upon the following exchange:

"[JUDGE]: Mr. Bowman, this comes on call for trial. Your attorney has said that you want to give up your right to a jury trial and have this court decide the matter. Is that true?

[DEFENDANT]: Yes, sir.

[JUDGE]: Do you know what a jury trial is, sir?

[DEFENDANT]: Yes, sir.

[JUDGE]: You have an absolute right to a jury trial unless you decide to give that up in open court. Do you understand that?

[DEFENDANT]: Yes, sir.

[JUDGE]: If you want to give up your right to a jury trial, sign the written jury waiver there.

[DEFENSE ATTORNEY]: Mr. Bowman, this is the jury waiver that I discussed with you earlier. By signing that you give up your right to a jury trial."

The defendant then signed the written jury waiver. We hold that the record supports a finding that the defendant knowingly waived his right to a trial by jury. See *People v. Frey* (1984), 103 Ill. 2d 327, 469 N.E.2d 195; *People v. Villareal* (1983), 114 Ill. App. 3d 389, 449 N.E.2d 198.

The two cases cited by the defendant, *People v. Sebag* (1982), 110 Ill. App. 3d 821, 443 N.E.2d 25, and *People v. Miller* (1977), 55 Ill. App. 3d 1047, 371 N.E.2d 917, are factually inapposite. In both *Sebag* and *Miller*, the defendants were not represented by counsel at any stage in the proceedings. In *Sebag*, the trial judge did not ask the defendant whether he understood what a jury was; he told the defendant only that by waiving a jury at that time the defendant could not reinstate it later. In *Miller*, the defendant was not finan-

cially eligible for a public defender, and the judge never made any inquiries concerning the defendant's knowledge of his right to a jury trial. The judge asked only whether the defendant wanted to waive his right to a jury trial, and when the defendant said that he did, the trial began.

The defendant next contends that he was denied his sixth amendment right to effective assistance of counsel. He claims that his attorney failed to object to the introduction of evidence of other crimes; did not object to the failure of the prosecutor to perfect his impeachment of the defendant; refused the trial judge's offer to continue the case in order to secure the presence of an alibi witness; and called a police officer as a defense witness who bolstered the State's case.

■■ Any claim of ineffectiveness of counsel depends on "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.) Under *Strickland*, the defendant must show that his counsel's performance was below an objective standard of reasonableness and that there was a reasonable probability the result of the proceedings would have been different but for counsel's errors. The defendant has the burden of showing actual incompetence and prejudice. *People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.

■■ Cunningham was asked on direct examination whether she had ever seen the defendant before January 11, 1989. She answered that she first saw the defendant in June 1988 when she made a "purchase from him in the same manner at the same address." The defense attorney did not object to the question or answer. Evidence of other crimes may be shown if it is relevant for any purpose other than to show propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821; *People v. Brown* (1990), 199 Ill. App. 3d 860, 557 N.E.2d 611.) All cases recognize that when the identification of the defendant is an issue, evidence of another crime which would bolster the identification is proper. In *People v. Cole* (1963), 29 Ill. 2d 501, 194 N.E.2d 269, an agent testified that he had previously purchased narcotics from the defendant. The supreme court held that evidence of the prior transactions was properly admitted because it strengthened the agent's identification of the defendant and tended to remove any doubt that the defendant's conduct was inadvertent or innocent. The court further noted that the evidence showed the relationship between the agent and the defendant and thus lent credence to the otherwise unrealistic ease with which the

agent managed the sale. (See also *People v. Vazquez* (1989), 180 Ill. App. 3d 270, 535 N.E.2d 981; *People v. Borawski* (1978), 61 Ill. App. 3d 774, 378 N.E.2d 255.) We judge, therefore, that the previous sale made by the defendant to Cunningham was admissible and that any objection to that evidence by the defense attorney would have been properly overruled. Consequently, it cannot be held that his failure to object constituted ineffective assistance.

■ The defendant next maintains that his attorney's failure to object to the cross-examination of the defendant constituted ineffective assistance. The defendant testified on direct examination that it would have been impossible for him to have sold PCP to Cunningham at 1 p.m. on January 11, 1989, because he was on his way to work at that time. During cross-examination it was brought out that the defendant's attorney had shown him his employment records. It was also established that he was supposed to start work at 5 p.m. on January 11. He testified that Andre King picked him up at 1 p.m. and that he was going to start work early that day. He admitted that the employment records showed that he punched in at 5 p.m., but he insisted that he "punched in early." We conclude that there was no error in the cross-examination because the defendant admitted what the employment records showed. For the same reason, we conclude that there was no error in the State's failure to introduce the employment records, and there was no error in the judge's summation expressing a finding that the employment records contradicted the defendant.

After Officer Struska's testimony, the defendant's attorney indicated that he wished to call Andre King to testify. The attorney informed the judge that he had attempted to contact King, but all attempts had failed. At the defendant's request, the judge continued the case to the following morning. King did not show up that morning, and after a brief recess the defendant took the stand. By the end of the defendant's testimony, King still had not appeared. The defendant's attorney told the judge that he had talked to King the previous day and tried to contact him again during the recess. King could not be found, and it did not appear that he was going to show up. The defendant's attorney then decided to rest his case with the defendant's approval.

■ The defendant has not established that his attorney's failure to produce Andre King constituted ineffective assistance. The flaw in the defendant's argument is contained in his brief in which he alleges that King "would have corroborated the defendant's testimony." By no means can we assume that King would have testified that he, the defendant's supervisor, picked him up at 1 p.m. and had him punch in

at 5 p.m. even though King knew the defendant had begun working earlier than 5 p.m.

The cases the defendant cites, *People v. Barry* (1990), 202 Ill. App. 3d 212, 559 N.E.2d 919, and *People v. Garza* (1989), 180 Ill. App. 3d 263, 535 N.E.2d 968, do not support his position. In *Garza*, the appellate court's reversal centered on the defendant's attorney's failure to use impeaching evidence in cross-examining the only identification witness. It was apparently conceded that the defendant's witnesses would have corroborated his defense. In *Barry*, the trial judge granted the defendant's post-conviction petition after the defendant's trial attorney testified that he did not interview the witnesses named by the defendant before trial. It was established at the post-conviction hearing that the witnesses "would corroborate defendant's theory of defense." *Barry*, 202 Ill. App. 3d at 217.

■ The defendant's last claim of ineffective assistance of counsel is based on the fact that his trial attorney called Officer Struska whose testimony, he argues, corroborated the testimony of Cunningham. It is true that Struska's testimony did corroborate the identification of Cunningham. But we fail to see any prejudice to the defendant because Struska's testimony could have been introduced by the State. It might have been permitted to be introduced in rebuttal.

The defendant's attorney was also attempting to show that the surveillance plan to which Cunningham had testified was poorly conceived. To some extent, the defendant's attorney was successful. He elicited the fact that Struska's surveillance point was on the overpass of an expressway looking at 5925 Wentworth at an angle and that the unmarked car Struska was in had been double-parked on 59th Street for approximately 20 to 25 minutes. Struska admitted that 59th Street was a busy street at 1 p.m., and there were cars turning onto 59th Street from both Wells and Wentworth along with the cars that continued on 59th Street. Those facts, it could be fairly argued, raised a doubt as to the officer's ability to view the location where the defendant allegedly made the sale.

In addition, the defendant's attorney attempted, through Struska, to create a reasonable doubt about the transaction itself. He questioned the fact that the unmarked squad car remained double-parked on a busy street, only 200 feet from where the transaction was taking place. Again, arguably, this would have looked suspicious to someone involved in drug trafficking, a suspicion which could have deterred the sale. The defendant's attorney also questioned the fact that the prearranged meeting place after the drug buy was only two blocks away on 57th and Wentworth and within eye view of the area where the sale

took place. We conclude, therefore, that the defendant has failed to establish ineffective assistance of counsel that would require a new trial.

■ The defendant's last claim is that he was improperly sentenced for a Class 2 felony when the indictment charged the defendant with a Class 3 felony. The State acknowledges that a typographical error in the indictment caused the defendant to be improperly sentenced. It is clear from the record that the judge intended that the defendant be incarcerated for the minimum period of time. We therefore reduce the sentence and impose a sentence of two years' imprisonment to be followed by a mandatory period of one year's supervision.

For these reasons, the judgment of conviction is affirmed and the sentence is modified.

Judgment affirmed in part and modified in part.

RAKOWSKI and LaPORTA, JJ., concur.