THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RUSSELL HIGHTOWER *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 78-745, 78-746 cons.

Opinion filed June 29, 1979.

Ralph Ruebner and Nancy Abrahams, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Wesley H. H. Ching, and Paul C. Gridelli, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendants were convicted of theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) and sentenced to 30 days imprisonment. On appeal, they contend that their convictions should be reversed because their waivers of jury trials were not understandingly made.

The following pertinent facts were adduced at trial.

*For the State*
*Joseph Jackson*
On February 9, 1978, he was robbed at gunpoint. His 1975 Buick LeSabre, his watch, and his wallet containing his driver's license and motor club card were taken. He never gave defendants Hightower and Harris permission to touch or take anything on his car.

On cross-examination, he acknowledged that neither Hightower nor Harris robbed him on February 9, 1978.
*Raymond Tuman, Chicago Police Officer*
On February 27, 1978, he saw defendants Hightower and Harris at 30th and Federal in Chicago. He observed Hightower and Harris take the last tire off a 1975 Buick, which was on "blocks" on the street, and put the

tire into a white stationwagon. When he questioned them about this activity, Hightower told him that the Buick was his car, and he was selling the tires to Harris. Hightower showed him an "Amco" card and a driver's license which were in the name of Joseph Jackson. He noticed a discrepancy between Hightower's height and weight and the height and weight on the driver's license. After a check revealed that the 1975 Buick had been reported stolen, he placed Hightower and Harris under arrest. Harris told him he was purchasing "the tires" for $200.

On cross-examination, he conceded that Hightower told him that he had purchased the Buick for $500.

### For the Defense
#### Defendant Travis Harris, on his own behalf

When arrested on February 27, he was buying four tires from Hightower. He had first met Hightower that same day at the house of his girlfriend, Cynthia Brown, and he thought Hightower owned the tires. On cross-examination he denied ever going into the trunk of the Buick, and stated that Hightower alone went into the Buick and took off the tires.

#### Cynthia Brown

She lives with Harris. Harris had met Hightower once before the incident, but they did not speak. On the day in question, Hightower and Harris left her house and went to Hightower's car, so that Harris could buy tires.

#### Defendant Russell Hightower, on his own behalf

He had purchased the 1975 Buick in question from Ray Caraway on the Monday before he was arrested. He had given Caraway $500, but was due to give him another $500 and get title to the car at that time. On February 27, 1978, immediately before his arrest by Officer Tuman, he was taking the tires off the car to sell them to Harris. He told Harris that he owned the car. He was selling the tires because the car would not move, and he was trying to get his money back. He had the keys to the car, and he put it on blocks and took the tires off by himself.

On cross-examination he admitted that he is not Joseph Jackson, but that at the time of his arrest he produced a driver's license and an "Amco" card which were in the name of Joseph Jackson and which he found in a wallet in the glove compartment of the car. He acknowledged that he met Harris at Cynthia Brown's house that day, but denied that Harris knew him or called out his first name.

### For the State in rebuttal
#### Police Officer Raymond Tuman

He observed defendant Harris open the trunk of the Buick in question, take out a jack, and place it in the white stationwagon.

OPINION

Defendants' sole contention on appeal is that they did not knowingly and understandingly waive their rights to a jury trial. Defendants based this contention on the following exchange:

> "ASSISTANT PUBLIC DEFENDER: Your Honor, Defendant is ready for trial. Mr. Hightower is demanding trial by jury, and Mr. Harris is ready for trial and will waive his right to a jury trial.
>
> THE COURT: We have to keep them together. I am not going to split them.
>
> ASSISTANT PUBLIC DEFENDER: Your Honor, Mr. Hightower will withdraw his demand for a jury, and he'll waive his right to a jury.
>
> THE COURT: What is the plea to the charge on Mr. Harris, trespassing and theft?
>
> ASSISTANT PUBLIC DEFENDER: Not guilty.
>
> THE COURT: What is the plea as to Mr. Hightower?
>
> ASSISTANT PUBLIC DEFENDER: Not guilty."

As defendants point out, section 103—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—6) provides that:

> "[E]very person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court,"

and it is the trial court's duty to insure that this is done. (*People v. Brown* (1977), 50 Ill. App. 3d 348, 365 N.E.2d 907.) Defendants initially argue that following the refusal to grant separate trials, the court should have "given an opportunity" or "allowed a short recess" for them to consult with their attorney. However, they concede that no request for a recess or opportunity for a consultation was ever made of the court, and that no error can be charged to the court on that basis. They nevertheless argue that because it does not appear that they discussed their jury waivers with their attorney after the court's ruling, those waivers were "coerced" by the ruling and "could not have knowingly and understandingly" been made.

We disagree with defendants' argument. In *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397, our supreme court dealt with an argument that the trial court had not sufficiently determined that defendant's waiver of a jury trial, made through her attorney, was knowingly and understandingly made. In rejecting this argument, the court stated that: "The record reveals that defendant's counsel, in her presence and without objection on her part, expressly advised the court that the plea was 'not guilty' and that a jury was waived. An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in, and to be bound

by, his action." (43 Ill. 2d 256, 260, 253 N.E.2d 397, 399.) In the instant case, as in *Sailor*, waivers of a jury trial by Hightower and Harris were made in open court by their attorney in their presence. There were no objections or any other indications by defendants that the waivers were not understood and acquiesced to. The situation presented in this case is therefore identical to the one in *People v. Melero* (1968), 99 Ill. App. 2d 208, 240 N.E.2d 756, in which we observed that "[i]f the jury waiver here was not understandingly made, this record does not show it." (99 Ill. App. 2d 208, 211, 240 N.E.2d 756, 758.) In *Melero* we further stated, in language quoted by our supreme court in *Sailor*, that:

"[T]he trial court was entitled to rely on the professional responsibility of defendant's attorney that when he informed the court that his client waived a jury, it was knowingly and understandingly consented to by his client. Defendant is not permitted to complain of an alleged error which was invited by his behavior and that of his attorney." (99 Ill. App. 2d 208, 211-12, 240 N.E.2d 756, 758, quoted at 43 Ill. 2d 261, 253 N.E.2d 399.)

Although defendants herein argue that the trial court's ruling against separate trials may in some unexplained way have affected their true wishes for jury trials, it appears that this argument is totally based upon speculation which is not supported by the record. In *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762, the Illinois Supreme Court repeated the rule expressed in *Sailor* that a waiver of a jury trial by defense counsel in defendant's presence and without objection is a valid waiver. Defendants correctly point out that in *Murrell*, the court accepted as "the preferred procedure" Standard 1.2(b) of the American Bar Association Standards relating to the Administration of Criminal Justice, which provides that a jury waiver should properly be made by defendant personally, either in writing or in open court for the record. (60 Ill. 2d 287, 291, 326 N.E.2d 762, 765.) Further, defendants attempt to distinguish *Murrell* by emphasizing defendant Hightower's original request for a jury trial and, as we noted above, by speculating as to the possible effect the joint trial ruling had on both jury waivers. The fact remains, however, that both jury waivers were made by defendants' attorney in their presence and without objection. In *Murrell*, in analyzing the waiver as preserved in the trial record, our supreme court noted that:

"[T]he waiver of the right to jury trial was not presumed, nor is the record silent on the question of waiver. The record shows that the waiver was made by counsel in open court in the presence of the defendant, who acquiesced in the waiver. The record is only silent as to the defendant's knowledge and intent." (60 Ill. 2d 287, 290.)

The supreme court concluded that it would not presume from a silent

record that a waiver made by defense counsel as described above was not knowingly and intelligently made. (60 Ill. 2d 287, 290-91, 326 N.E.2d 762, 764-65.) We conclude that neither the trial court nor this court could properly presume from an otherwise silent record that a jury waiver made by the defendants through their attorney in their presence and without objection, was not understandingly made. Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.