THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARRY C. SPAIN, Defendant-Appellant.

First District (5th Division)    No. 79-2310

Opinion filed December 12, 1980.

Julius Lucius Echeles and George M. Zuganelis, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of aggravated assault and unlawful use of a weapon. He was sentenced to one year probation on each charge, the terms to run concurrently. On appeal, he contends that (1) guilt was not proven beyond a reasonable doubt on the assault charge; (2) the jury waiver was ineffective; (3) discovery was improperly restricted; and (4) the exemption for security guards applies to the charge of unlawful use of a weapon.

The record discloses that police officer Redman testified he was working undercover (attired as a female) when he heard a siren and saw a brown Cadillac approaching. It stopped next to him, and the driver (whom Redman identified in court as defendant) told him to leave, as his (defendant's) girls were working the street. When Redman refused, defendant warned him to get off the street or he would throw him in jail. He testified that defendant then moved a sign on the seat next to him, picked up a revolver which had been under the sign, waved it around, and then pointed it at Redman's chest. He stated that the artificial lighting was good, and he observed the gun to be a .38-caliber blue steel snub-nosed revolver. He then "fled northbound * * * in fear of being shot and receiving a battery" and went to the 4400 block on Broadway, where he related the incident to Sergeant Gralak and Officers Graf and Hergott. Redman admitted that neither an arrest slip nor a police report (both of which had been filled out by him) stated that defendant had pointed the gun at him.

Officer Graf testified that from his car, which was parked 30 or 35 feet across the street at about 4210 Broadway, he observed Redman and defendant talking, but he did not see defendant's arms or hands, nor did he see Redman running away. He said that Redman and his female partner came to his (Graf's) car and told him that Redman had been assaulted with a revolver and that they then went to the 4400 block, where Sergeant Gralak was told of the occurrence. Later, when defendant was arrested, a .38-caliber snub-nosed revolver was recovered from him.

Sergeant Gralak testified that after Redman told him of the incident, he (Gralak) moved the team of police officers two blocks north and that later, when defendant's car reappeared carrying a passenger, he placed defendant under arrest. At that time, defendant said, "I'm one of you" and displayed a revolver in his waistband.

A defense witness (Kathleen Rupp), the passenger in defendant's car at the time of his arrest, testified that earlier that night she was in her car and stopped behind defendant's Cadillac at a traffic light when she noticed several men in female garb get out of a car. She then observed someone talking to defendant while leaning into his car. She did not see whether defendant picked up a gun nor did she know whether he had one

at the time of his arrest, and she could not say that Redman was the person leaning into defendant's car. Later, she returned with defendant in his car to the same area, because she was curious about what had occurred before.

Defendant testified he had flown to Chicago from California that night and was carrying government classified documents, which he was delivering to his Chicago office in his capacity as an investigator for the National Investigation Bureau. The documents were carried in the trunk of a cab taken from the airport to Rupp's Chicago apartment, where they were put in her car with the luggage. They drove to Evanston and transferred the documents and luggage to his car and were on their way back to Chicago in separate cars when he had to stop for a traffic signal, and Redman leaned into his car. He told him to get out or he would be thrown in jail. He did not point a gun at anyone, and he had only a toy pistol on the seat. After his encounter with Redman, he went to his apartment where he removed the documents from his luggage and also obtained a weapon, which he put in his waistband, and he then returned to his Chicago office where he left the documents. During the trip from the airport to Rupp's apartment, then to Evanston and back to Chicago, defendant had the documents with him but was not carrying a gun. He was carrying a gun at the time of his arrest because of the "hookers and * * * perverts and problems out there." At that time, he also had a "blue card" issued by the Department of Registration and Education, certifying that he had completed an approved 30-hour training course for security guards.

## OPINION

Defendant first contends that guilt was not proven beyond a reasonable doubt on the charge of aggravated assault because of irreconcilable discrepancies in the evidence. He points to variances in certain aspects of Redman's testimony, as follows: Redman had testified that after the gun was pointed at him he fled from defendant's car to the 4400 block of Broadway, where he related the incident to Sergeant Gralak and Officers Graf and Hergott—whereas, Graf said he did not see anything in defendant's hand; that he did not see Redman run from defendant's car; and that Redman and his female partner returned to Graf's car and all three then went to 4400 Broadway to tell Sergeant Gralak what had occurred. The latter testified that he was at the 4200 block when Redman came and told him of the incident. In addition, neither Redman's arrest slip nor his formal police report contained any statement that defendant had pointed a gun at him.

A criminal conviction will not be reversed on review unless the evidence presented at trial makes improbable the proof of guilt beyond a

reasonable doubt. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) Initially, we note our belief that the record shows the elements of the offense of aggravated assault (see Ill. Rev. Stat. 1977, ch. 38, par. 12—2) were sufficiently established in the testimony of Officer Redman that defendant waved a revolver at him and pointed it at his chest from a distance of three or four feet; that the lighting was adequate for him to identify a .38-caliber blue steel snub-nosed revolver in defendant's hand; and that, as a result of the encounter, defendant fled "in fear of being shot and receiving a battery."

The basis of defendant's contention, however, is that Redman lacked credibility as a witness. We find this argument unpersuasive, and that the following cases cited by defendant in support are distinguishable. In *People v. Catavdella* (1964), 31 Ill. 2d 382, 202 N.E.2d 1, the court found it not unreasonable to view as false, and not as a mere mistake, the testimony of a police officer who testified at a preliminary hearing that he had not observed defendants violating any law prior to their arrest; whereas, at trial he testified that he had observed defendants violating several laws. The officer's testimony also was found contradictory on other matters, such as the street on which the police officers were driving when they first observed defendants' auto and whether the officer had a view of the rear seat of that auto. In *People v. Brown* (1968), 99 Ill. App. 2d 281, 241 N.E.2d 653, a rape victim gave conflicting testimony as to whether she had been raped by one or three men, as to what point in the incident surgical bandages had been ripped from her, and concerning her marital status. The court found those variances to be immaterial in relation to proof of the crime, but that they significantly affected the victim's credibility in view of all the evidence. Finally, in *People v. Sheppard* (1949), 402 Ill. 347, 83 N.E.2d 587, the victim testified that defendant shot once at him, said nothing before the shooting, and mumbled incoherently afterwards. However, defendant and a witness testified that two shots were fired and that conversation took place before and after both shots. The court found that the difficulty in reconciling the testimony created "a grave and substantial doubt" of defendant's guilt (402 Ill. 347, 352, 83 N.E.2d 587, 589), which was reinforced by the victim's explanation for choosing to rent a vacant room in defendant's building at 4 a.m.

We think that the apparent discrepancies in the evidence here, in comparison to those in the above cases, are minor; and, indeed, we view them to be generally reconcilable. Officer Redman testified that he escaped from defendant by running northbound; Officer Graf testified that he did not see Redman running and thus did not contradict but

merely failed to corroborate Redman's statement. Moreover, Graf's testimony that Redman stopped first at his car before they went to see Gralak has little significance, as Redman was not asked at any time whether he stopped at Graf's car before reporting the incident to Gralak. His testimony also was not necessarily inconsistent with his statement in the police report that Redman ran to the safety of a parked vehicle. While Redman may not have stated precisely where it was that he informed Gralak of the occurrence (he said Gralak was in the 4400 block, while Redman testified he was in the 4200 block), we think this slight variance is minor and presented only a factual question to be resolved by the trial court. (See *Yarbrough.*) Furthermore, we are of the belief that the absence of any statement in the arrest slip that defendant pointed the gun at Redman was not impeaching. It appears that an arrest slip is a summary prepared at the time of booking, and it has been held that even a factual omission in a formal police report did not necessarily impeach or nullify the testimony of the officer who wrote it but raised only a question as to his credibility (*People v. Martin* (1975), 27 Ill. App. 3d 99, 326 N.E.2d 469 (abstract)); nor can Redman be held accountable for the second page of the police report, which he denied writing, as it is well established that a police report which the identifying officer neither prepared nor signed does not constitute a basis for impeachment (*People v. Currie* (1980), 84 Ill. App. 3d 1056, 405 N.E.2d 142; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098).

■■ Finally, we note that defendant nowhere indicates how Redman's testimony as to the aggravated assault charge lacked credibility (*cf. People v. Burns* (1979), 79 Ill. App. 3d 549, 399 N.E.2d 143), and that a positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction (*Vriner; Burns*). In view of the minor nature of the variances in the testimony and considering the fact that there was positive identification of defendant by Redman, it appears to us that defendant's guilt was established beyond a reasonable doubt. See *Yarbrough.*

Defendant next contends his waiver of a jury trial was invalid because immediately after it was accomplished the complaints were amended as to the filing date. The following colloquy took place as Officer Redman, the first prosecution witness, was sworn but had not as yet been questioned:

"THE COURT: Wait a minute. Before I start, there's a jury waiver here.

MR. WARE [defendant's counsel]: I waive the jury.

THE COURT: Can we have a jury waiver in writing here[?] Are we trying both charges here at once?

MR. CHIGANOS: Yes, your Honor; aggravated assault and unlawful use of a weapon.

THE COURT: That is all I wanted to know. All right. Jury waived; plea is not guilty, right, Mr. Ware?

MR. WARE: Right, your Honor."

At this point it was brought to the court's attention that the complaints had not been sworn to, and Officer Redman then swore to them.

Waiver of the right to a jury trial is valid where the accused permits his attorney, in his presence and without objection, to expressly advise the court of that choice, and the accused is deemed thereby to have agreed to and to be bound by his attorney's action. (*People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762; *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397; *People v. Neeley* (1979), 79 Ill. App. 3d 528, 398 N.E.2d 988; *People v. Hightower* (1979), 73 Ill. App. 3d 779, 392 N.E.2d 646.) Whether such waiver is knowingly and understandingly made depends on the facts and circumstances of each case, and a reviewing court will consider the record as a whole in making that determination. *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121.

■■ Here, it is clear that defense counsel expressly waived the jury trial prior to the amendment of the complaints and did not thereafter seek to withdraw the waiver, and since the amendment pertained only to the time of filing and in no manner affected the charge or outcome, we see no merit in the contention that the waiver was invalid.

Defendant's reliance on *People v. Norris* (1978), 62 Ill. App. 3d 228, 379 N.E.2d 80, is misplaced. There, defendant sought to withdraw his jury waiver after the State presented an alleged eyewitness whose name was added to the list of State's witnesses subsequent to the waiver. Finding that the additional evidence unfairly surprised and prejudiced defendant, this court held that the jury waiver was not knowingly and intelligently executed. Thus, in *Norris*, but not in the case at bar, defendant was unaware of damaging evidence against him at the time of the waiver. Another case cited by defendant, *People v. Smith* (1973), 11 Ill. App. 3d 423, 296 N.E.2d 628, is also distinguishable. There, defendant was initially charged with "driving while under the influence of liquor," and counsel executed a jury waiver by letter. The State thereafter amended the complaint to "driving while under the influence of intoxicating liquor," and the trial court then denied a request of defendant to withdraw the waiver. This court, on appeal, found that the waiver had been solely for the purpose of taking advantage of the initial omission of the word "intoxicating" in the charging instrument, and because it may not have been intended to have been made to the charge as amended, he should have been allowed to withdraw the waiver when the complaint was amended. There was no such deficiency in the charge here, and the

complaint was amended only as to the time of filing. Moreover, no attempt was made to withdraw the waiver after this amendment. Under such circumstances, we think it clear that the amendment had no effect on the validity of the complaint and that defendant's jury waiver was knowingly and understandably made.

■■ Additionally, we see no merit in the further contention of defendant that his attorney did not have copies of the complaints when the trial started and, thus, that he did not know the charges when he waived his right to a jury. At the trial, prior to the taking of any testimony, defense counsel stated that he had no discovery answers, no list of witnesses, no police reports, and that "we are entitled to a bill of particulars, we are entitled to any statements by any witnesses * * *. We are entitled to complaints." The court then ordered the State to give defendant whatever it had within the "*Schmidt* case." The record shows that the State provided defense counsel with an answer to his request for discovery and that both parties had answered ready for trial. We are of the opinion that defendant has failed to demonstrate that he lacked copies of the complaints, as his argument in this regard is based solely on the statement of his counsel before the trial began that "We're entitled to complaints." Neither in his discovery motion nor at any other time prior to or during trial were the complaints requested, and we do not believe that from that statement alone it can be inferred that defendant was not adequately apprised of the charges against him or even that his capable counsel had not eventually obtained the complaints.

Defendant further contends that because he was faced with a possible "jail sentence," he was improperly denied the right to certain pretrial discovery of a page of a police report which Officer Redman said was neither prepared nor signed by him. We find that contention without merit. In accordance with Supreme Court Rule 411, criminal discovery rules apply "in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary." (Ill. Rev. Stat. 1977, ch. 110A, par. 411.) In *People v. Schmidt* (1974), 56 Ill. 2d 572, 309 N.E.2d 557, the supreme court declined to extend the felony discovery rules to misdemeanor cases and stressed the need to eliminate substantial differences in the scope of discovery permitted by the courts. Finding sufficient the discovery provided by case law and statute for misdemeanor cases, the *Schmidt* court stated that:

> "The State is required to furnish defendants in misdemeanor cases with a list of witnesses [citation], any confession of the defendant [citation], [and] evidence negating the defendant's guilt [citation] * * *." 56 Ill. 2d 572, 575, 309 N.E.2d 557, 558; also see *People ex rel. Fisher v. Carey* (1978), 64 Ill. App. 3d 239, 380

N.E.2d 1150; *People v. Petru* (1977), 52 Ill. App. 3d 676, 367 N.E.2d 980.

The ruling of the supreme court is, we believe, that discovery is broader in felony cases because of the potentially greater deprivation of liberty. The mere possibility, as here, of incarceration in a facility less restrictive than a penitentiary (see Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—3(a)(1)) does not entitle an accused to discovery under Rule 411 (*Petru*). Defendant has additionally failed to demonstrate in what respect the State did not comply with *Schmidt*, and we note parenthetically that he was not prejudiced because even if the page of the report were discoverable, it would not be admissible to impeach Officer Redman, as the foregoing discussion indicates.

Defendant's final contention is that he should not have been convicted of unlawful use of a weapon because, at the time of the offense, he was employed as a security guard and was thereby exempted by statute. The State maintains, on the other hand, that defendant presented no evidence to prove entitlement to the exemption.

The asserted exemption to the offense of unlawful use of a weapon (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10)) applies to:

"[S]ecurity guards while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment, provided that such commuting is accomplished within one hour from departure from home or place of employment * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 24—2(a)(4).)

For purposes of the exemption, security guard is defined as a person:

"[E]mployed by a licensed detective agency as defined by 'AN ACT to provide for Licensing and Regulating Detectives and Detective Agencies', approved June 26, 1933, as amended, [Ill. Rev. Stat. 1977, ch. 111, par. 2601 *et seq.*] who are so employed for any of the purposes enumerated in Section 1(B) of such Act * * * provided, that such security guard has successfully completed a course of study, approved by and supervised by the Department of Registration and Education, consisting of not less than 30 hours of training which shall include theory of law enforcement, liability for acts and the handling of weapons. The Department of Registration and Education shall provide suitable documentation to demonstrate the successful completion of such course. Such documentation shall be carried by the security guard at all times when he is in possession of a concealable weapon." (Ill. Rev. Stat. 1977, ch. 38, par. 24—2 (a)(4).)

With respect to the burden of proving the exemption, section 24—2(g) (Ill. Rev. Stat. 1977, ch. 38, par. 24—2(g)) provides:

"An information or indictment based upon a violation of any Subsection of this Article need not negative any exemptions contained in this Article. The defendant shall have the burden of proving such an exemption."

It has been held that the State must prove each element of the offense of unlawful use of a weapon beyond reasonable doubt but is not required to negate an exemption. (*People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472.) To the contrary, defendant has the burden of proving entitlement to an exemption by a preponderance of the evidence. *People v. Francis* (1978), 73 Ill. 2d 184, 383 N.E.2d 161; *Smith; cf. People v. Rinehart* (1967), 81 Ill. App. 2d 125, 225 N.E.2d 486.

■■ In the case at bar, while defendant had in his possession a "blue card" indicating successful completion of a 30-hour training course and introduced into evidence a letter from the Department in support thereof (see *People v. Lofton* (1977), 69 Ill. 2d 67, 370 N.E.2d 517), he failed to show that he was actually engaged in the performance of his duties as a security guard at the time of the incident (*cf. People v. Johnson* (1975), 27 Ill. App. 3d 541, 327 N.E.2d 424) or that he was en route to or from his place of employment (*cf. People v. Randle* (1975), 26 Ill. App. 3d 713, 325 N.E.2d 345 (abstract)). Nor did he present any evidence to demonstrate that the National Investigation Bureau, where he was allegedly employed, was a licensed detective agency as required by section 24—2(a)(4). Moreover, the account of his various movements that evening do not reasonably support the inference that at the time of the offense he had been assigned by his employer to transport valuable documents, for at the time in question he had already delivered the documents to his Chicago office and, instead of returning home, he drove with Miss Rupp to the area where he had first encountered Officer Redman. Further, defendant testified that he was carrying the revolver because of the "hookers and * * * perverts and problems out there." Accordingly, we conclude that defendant has failed to sustain the burden required to place him within the exemption for security guards.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.