THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY CLAUSON, Defendant-Appellant.

First District (1st Division)   No. 1—87—0806

Opinion filed April 17, 1989.

John T. Kelly, of Orland Park, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Judy L. Groeneveld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Stanley Clauson (defendant) appeals his conviction of misdemeanor criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—15) following a bench trial and his sentence of one year's conditional discharge, 30 days in the Cook County Department of Corrections, and a $500 fine. Defendant contends that the trial court erred in allowing the State to introduce evidence of a prior homosexual incident and testimony from a witness whose statements were not previously disclosed to the defense, that defendant was not proven guilty beyond a reasonable doubt, and that defendant did not waive his constitutional

right to a jury trial. We reverse defendant's conviction and grant him a new trial.

At trial, the State presented the following witnesses. D.E., a resident of Midlothian, Illinois, testified to the events which occurred on July 15, 1986, when he was 15 years old. At approximately 3:30 or 4 p.m. on that day, after assisting in an arts and craft class at the First United Methodist Church in Harvey, Illinois, he left the church with defendant, who was a codirector of the church youth program, and two girls in defendant's van. After defendant dropped off the two girls at their homes in Dolton, Illinois, D.E. fell asleep in the backseat captain's chair on their way to D.E.'s home in Midlothian.

When D.E. awoke, D.E.'s pants were down around his knees, defendant was at his side with his mouth on D.E.'s penis, and there was a policeman knocking on the window of the van. D.E. was wearing a shirt, jeans, a belt with a buckle, and underpants at the time. Defendant then arose, and D.E. brought his pants back up and exited the van "real quick."

Outside the van, one of the two police officers present took D.E. to a police car and asked him his age. Later, at the police station, D.E. told the police officer that "he had my pants down and his mouth on my penis."

D.E. further stated that he had known defendant for approximately six or seven years and that he had never been assaulted by defendant before. D.E. admitted that defendant had counseled him once for always getting in trouble, that he was in trouble for lying in the past, that a month prior to the incident defendant's wife was angry with him because he had been in their daughter's bedroom, and that defendant or his wife had once accused him of shooting a "BB" gun.

John Merrick, president of Custom Plate Glass, located at 147th and Mozart Streets in Midlothian, testified that at approximately 5 p.m. on July 15, 1986, he observed a van going to the end of Mozart Street and turn into his private driveway. He recognized it as the same beige van he had seen six months earlier, on or about January 15, 1986, parked at the same location. On that previous date, he had looked inside the van, which had tinted windows and venetian blinds, and observed one man "chewing" on the other man's penis. Merrick was unable to see their faces at that time, but he saw the side of the driver's face as the van was leaving. Merrick made an in-court identification of defendant as the man he had seen on approximately January 15, 1986.

Merrick further testified that on July 15, 1986, he observed the side of the driver's face as the van went by approximately 20 miles per

hour, and he told his wife to call the police. When the police arrived a few minutes later, Merrick related to an officer "what was going on at the end of the block."

Sergeant Dirk Petry testified that after responding to a suspicious-vehicle call at approximately 5:10 p.m. on July 15, 1986, Merrick directed him to the van. Petry looked through the driver's side window as he approached the van and saw defendant walk up from the rear of the van to the driver's seat and noticed D.E. sitting in the rear passenger seat. Petry had both of them exit the van, and D.E.'s clothes were not in disarray when he exited.

In response to Petry's inquiry into "what was going on," defendant stated that they were just having a conversation and D.E. stated that he discovered defendant sucking on his penis when he awoke after having fallen asleep on their ride home. Petry then told defendant to follow him to the police station, and Petry drove D.E. to the station in his squad car.

The defense presented the following evidence in its case in chief. Defendant testified that he had been employed at Thornridge High School for 27 years as a teacher and was married with three children. On July 15, 1986, at 4:20 p.m., he left the church with his two children, Angela Willis, Denise Hubbert, and D.E., after having loaded 20 to 30 bags of paper into his van for eventual recycling. He dropped off his children, ages 8 and 12, at home in South Holland first because his son had to change clothes and eat before a "T-Ball" game at 5:30. Defendant then dropped off Angela Willis and Denise Hubbert in Dolton. At approximately 5 p.m., on his way to drop D.E. off in Midlothian, he stopped a block or two from D.E.'s home to counsel him, parking away from D.E.'s home because D.E. had a communication problem at home and they could not talk there.

At approximately 5:15 p.m., the police arrived while defendant was standing in the aisle by the captain's chairs stacking papers behind the front driver's seat and talking to D.E. The officer knocked on the window and requested that defendant and D.E. exit the van. Upon their exiting the van, the officer asked D.E. his age, to which D.E. first retorted "17," then stated "16." The officer then asked D.E., "Do you always do that?" to which D.E. replied that he was asleep. The officer thereafter instructed D.E. to go into the police car and told defendant to follow them to the station.

Defendant denied committing the acts charged. He had never seen Merrick before trial. He was not in the vicinity of 147th and Mozart Streets on January 15, 1986, but was in school at that time. He also stated that he continually reprimanded D.E. because of his poor behav-

ior and that he had reprimanded him for making sexual advances to defendant's daughter one month prior to the incident.

Denise Hubbert testified that she left the church that day with defendant, D.E., Angela, and defendant's two children. She stated on cross-examination that the newspapers were "way in the back behind the seat" and were not up by the front of the van near D.E. D.E. was awake when defendant dropped her off in Dolton at approximately 4:45 p.m.

Six character witnesses testified that defendant's reputation for truthfulness was outstanding, including a pastor of the First Methodist Church who had known defendant for 16 years, a university director with the Illinois Education Association who had daily contact with defendant as a teacher, and a number of other school teachers.

A neighbor, a cook at the church, and two teachers also testified that D.E. had a bad reputation for truthfulness.

On appeal, we first address defendant's contention that he did not waive his constitutional right to a jury trial. Defendant argues that because the transcripts of proceedings are devoid of any indication that defendant waived a jury trial or that any admonishments were given to defendant regarding his jury rights, because no signed jury waiver exists, and because the only suggestion of defendant's jury waiver is a reference "J/W" on the half sheet, there is no "understanding waiver" as constitutionally and statutorily required. (Ill. Rev. Stat. 1985, ch. 38, par. 103—6; Ill. Const. 1970, art. I, §8; U.S. Const., amend. VI.) The State responds that the record taken as a whole clearly shows that defendant knowingly and intelligently waived his right to a jury trial and a finding to this effect would be consistent with Illinois case law.

Before addressing the Illinois case law on this issue, it is necessary to outline the chronological history of the case as it relates to the jury issue. On September 18, 1986, attorney Redell appeared on behalf of defendant before Judge Martin McDonough. The court denied Redell's request for a continuance but complied with his oral demand for a jury trial by transferring the case to a jury courtroom. At a hearing before Judge Foxgrover on that same date, Redell requested a continuance and a jury demand. Foxgrover vehemently stated that he would set only one status date and a trial date.

On the October 23, 1986, status date, the court asked Redell whether "this was a definite jury matter," to which he responded "at this time it would definitely be a jury trial." A trial date was then set for February 16, 1987, but was later changed to the 17th after the court notified the parties that the 16th was a court holiday.

On February 17, 1987, attorney John T. Kelly filed his appearance

on behalf of defendant. The entry on the half sheet for that date states "PNG JW Trial 2-18-87." A bench trial commenced on that date. The transcript for the 17th indicates that defendant was present at the beginning of the trial, but it does not reflect that the court admonished defendant of his jury rights, nor is there any discussion as to whether the trial was to proceed by bench or jury.

The transcript of the hearing on the post-trial motions on March 17, 1987, reflects a conversation the court had with attorney Kelly with regard to his actions and representations in this matter. Kelly stated that he had "no knowledge [or inquiry of defendant] that he had not waived his jury until the third or fourth witness testified at trial." Kelly acknowledged that he did not make a motion for a mistrial on these grounds. The court then questioned Kelly as to certain representations he had made to the court during discussions in chambers in defendant's absence. Kelly acknowledged that he stated that there would be no problem with scheduling the witnesses for trial because it was a bench trial. He also admitted that accommodations had been made to accord with his representation that it was a bench trial and that he had discussed the accommodations with defendant.

After setting forth counsel's representations for the record, the trial court then relied on *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762, and found that defendant had waived his right to a jury trial through his attorney's expressed waiver. The court also noted the half sheet indicating a plea of not guilty, jury waived, and stated "it was specifically asked" by the court at the time the trial commenced.

■ Illinois case law reveals that the determination of whether a jury waiver was knowingly and intelligently made cannot rest on a precise formula and necessarily turns on the facts and circumstances of each particular case. (*People v. Frey* (1984), 103 Ill. 2d 327, 469 N.E.2d 195; *People v. Gay* (1972), 4 Ill. App. 3d 652, 281 N.E.2d 738.) Courts have routinely held, however, that where the defendant's attorney expressly advises the court of defendant's choice to proceed by bench trial in the defendant's presence without objection from defendant, a valid waiver may be found from the defendant's acquiescence to that waiver. *People v. Spain* (1980), 91 Ill. App. 3d 900, 906, 415 N.E.2d 456, 460; *People v. Frey* (1984), 103 Ill. 2d 327, 332, 469 N.E.2d 195, 197.

The State argues here that the circumstances in the instant case demonstrate defendant's understanding waiver. First, it is clear that defense counsel understood the trial would not proceed by jury. He also admitted at the post-trial motion hearing that he had discussed the accommodation of witnesses with defendant and that these arrange-

ments accorded with the time frame needed for a bench trial. Second, defendant was highly educated, having a bachelor's degree and a master's degree in business administration. Finally, defendant was present when the trial commenced and did not object at that time or any time throughout the trial. To support its position, the State cites a number of Illinois cases wherein courts have considered a variety of similar circumstances as factors to finding an understanding jury waiver. *Frey*, 103 Ill. 2d 327, 469 N.E.2d 195, and *People v. Turner* (1986), 145 Ill. App. 3d 446, 495 N.E.2d 1056 (the defendant's intelligence, experience, and education and his failure to object to the absence of a jury); *People v. Mitchell* (1974), 21 Ill. App. 3d 171, 315 N.E.2d 101, and *People v. Baker* (1969), 126 Ill. App. 2d 1, 262 N.E.2d 7 (whether defendant had a meaningful opportunity to consult with his attorney before trial on the question of jury waiver).

■ In all of the above cases, the defendant was present when his counsel made the express waiver to the court. We do not believe defendant can be held to have acquiesced to his counsel's waiver made outside his presence. The supreme court's remarks in the case relied on by the trial court, *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762, are noteworthy:

> "In each of these cases now under consideration the waiver of the right to jury trial was not presumed, nor is the record silent on the question of waiver. The record shows that the waiver was made by counsel in open court in the presence of the defendant, who acquiesced in the waiver. The record is only silent as to the defendant's knowledge and intent." (*Murrell*, 60 Ill. 2d at 290, 326 N.E.2d at 764.)

Unlike *Murrell*, the record is silent as to whether defendant was aware of the jury waiver. In fact, the record shows that at all times when the jury matter was discussed while defendant was present in court, his counsel had indicated there would be a jury trial. Furthermore, Kelly, who had just recently filed his appearance in the case, stated after trial that defendant mentioned the matter after the third or fourth witness had been called. We do not believe the fact that Kelly failed to inform the court of the matter when defendant brought it to his attention or the fact that defendant is an educated man in areas other than the law justifies a conclusion that defendant knowingly and understandingly waived his constitutional right to a jury trial. In effect, the State is asking us not only to presume that defendant intended the waiver but that because of the docket entry and counsel's representations outside defendant's presence, he was also aware of the waiver. We will not do so.

Under these circumstances and in light of Illinois case law, we hold that defendant has not waived his right to a jury trial. We, therefore, reverse defendant's conviction and remand the case for a new trial.

Because defendant will be granted a new trial, we need not address his contention that he was prejudiced by unfair surprise by the admission of testimony of a witness whose statements were not disclosed in the State's response to defendant's request for misdemeanor discovery. Any unfair surprise is mooted by the new trial, as defendant is now aware of the substance of the testimony. It is necessary, though, to address the other claims of error raised by defendant.

Defendant contends that Merrick's testimony of a prior incident involving defendant unfairly prejudiced him because it lacked relevance to the charge and its sole purpose was to demonstrate defendant's propensity to commit the crime. Merrick testified that six months earlier, defendant had driven the same van, had parked at the same dead-end street, and had engaged in the same sex act as on July 15, 1986.

Generally, evidence of other crimes is inadmissible if offered merely to establish a defendant's propensity to commit a crime (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238), but it may be admissible if relevant to prove *modus operandi*, intent, identity, motive or absence of mistake. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The Illinois Supreme Court has even more broadly stated that evidence of other offenses is admissible if relevant for any purpose other than to merely show a defendant's propensity to commit a crime. *People v. McDonald*, 62 Ill. 2d at 455, 343 N.E.2d at 493; *People v. Dewey* (1969), 42 Ill. 2d 148, 157, 246 N.E.2d 232, 237.

Contrary to defendant's assertion, no Illinois court has broadly held that in sex crime cases evidence of defendant's prior sexual acts is only admissible if committed with the complaining witness. The cases cited by defendant for this proposition, *People v. McMillan* (1980), 86 Ill. App. 3d 208, 407 N.E.2d 207, and *People v. Rogers* (1926), 324 Ill. 224, 154 N.E. 909, did not involve *modus operandi* testimony. These cases narrowly held that the same prior sex crime with another person was not admissible to prove the defendant's intent to commit the sex crime with the complaining witness.

The State responds to defendant's contention by arguing that the prior incident is relevant to show defendant's intent and *modus operandi* in parking the van at that particular location. Defendant, on the other hand, asserts that the testimony could not be relevant for these purposes because identity is not in issue here and intent is not an element of the charge of criminal sexual abuse.

■ We find that such evidence would be relevant to material issues in this case. Evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed the crime but also to the issue of whether a crime was in fact committed. (*People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1034, 454 N.E.2d 334, 341; *People v. Osborn* (1977), 53 Ill. App. 3d 312, 318, 320-23, 368 N.E.2d 608, 612, 615; *People v. Partin* (1987), 156 Ill. App. 3d 365, 372, 409 N.E.2d 662, 666.) The instant case is similar to *People v. Partin* (1987), 156 Ill. App. 3d 365, 509 N.E.2d 662. In *Partin*, the 14-year-old complainant, who had worked for the defendant for three years, charged the defendant with fondling him and taking pornographic pictures. The court found that evidence of the defendant's prior acts with minors performed at the same location and in the same manner were relevant and admissible where the identity of the defendant was not is dispute, but defendant had placed in issue whether the crime in fact was committed. (*Partin*, 156 Ill. App. 3d at 372, 509 N.E.2d at 666.) Like *Partin*, Merrick's testimony of defendant's *modus operandi* is relevant to the material disputed issues of defendant's purpose in parking the van at that location and whether defendant performed the act in issue.

■■ ■ We further find that proof of defendant's *modus operandi* was sufficiently established by Merrick's testimony. In Illinois, evidence of *modus operandi* may be admitted upon a strong and persuasive showing of a similarity of the crime charged and the separate offense that establishes a substantial and meaningful link between the offenses being compared. (*People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470; *People v. Partin*, 156 Ill. App. 3d 365, 509 N.E.2d 662.) Some distinctive feature not common to most offenses of that type must be present to establish this link. *Tate*, 87 Ill. 2d at 142-43, 429 N.E.2d at 474-75; *Partin*, 156 Ill. App. 3d at 370, 509 N.E.2d at 665.

In our judgment, several distinctive features are present in the case at bar. Merrick's testimony disclosed that defendant here in each incident drove a beige van with tinted windows and venetian blinds to the same private drive on a dead-end street to engage in a specific sex act. Similar to the situation here is the court's admission of *modus operandi* testimony in *People v. Hayes* (1988), 168 Ill. App. 3d 816, 522 N.E.2d 1279, where the assailant used a silver-colored gun in each robbery and a bag for the robbed money, and the robberies were committed about the same time and in the same shopping center. Although Merrick's testimony here did not reveal whether the other male on the prior occasion was a youth and, thus, even a crime, exact identity of the offenses is not required to admit evidence of other crimes. (*Partin*, 156 Ill. App. 3d at 371, 509 N.E.2d at 665; *Fuller*, 117 Ill. App. 3d at

1035, 454 N.E.2d at 342.) The State is required only to prove the defendant committed the crime, wrong, or act and not that the defendant was convicted for the same crime or a similar crime. *People v. Embry* (1988), 177 Ill. App. 3d 96, 531 N.E.2d 1130 (evidence that the defendant, who was charged with child abduction in ordering minor girls into his car, had previously asked a 17-year-old girl in similar circumstances whether she wanted a ride held admissible).

Finally, we find that Merrick's testimony sufficiently identified defendant as the person involved in the January incident. Not only did Merrick describe the van in detail and identify it as the same van involved in the July incident, he also stated that when the van was leaving on that January day, he observed the side of the driver's face and unequivocally identified defendant at trial as that driver. The fact that Merrick could not observe the faces of the two male persons when he observed them performing the sex act does not discredit Merrick's *modus operandi* testimony. The obvious and logical inference to be drawn from his testimony that the defendant was the driver of the van is that defendant was also the person who engaged in the sex act moments earlier.

Based on the foregoing and because the determination of whether the evidence is admissible for such a purpose and whether the probative value of the evidence outweighs its prejudicial effect is within the sound discretion of the trial court (*People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334), we hold that the trial court did not abuse its discretion in admitting Merrick's testimony.

As to defendant's final contention concerning the reasonable doubt issue, we find that the evidence adduced at trial sufficiently supports the trial court's conclusion that defendant was proved guilty beyond a reasonable doubt.

Accordingly, due to the absence of defendant's jury waiver, we reverse defendant's conviction and remand this case to the trial court for a new trial consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.