THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY CLAUSON, Defendant-Appellant.

First District (1st Division)   No. 1—90—0483

Opinion filed April 18, 1994.

Rita A. Fry, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Brian Holmes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Stanley Clauson was charged with misdemeanor criminal sexual abuse. In *People v. Clauson* (1989), 182 Ill. App. 3d 268, 537 N.E.2d 1048, we reversed his conviction and remanded the cause for a new trial, holding that there was no waiver of a jury trial. Following a jury trial in the circuit court of Cook County, defendant was found guilty of criminal sexual abuse and sentenced to one year's conditional discharge, with 30 days in the Cook County Department of Corrections and a $500 fine. Defendant now appeals his conviction, alleging that the trial court erred in: (1) refusing to permit defendant to elicit testimony of the complainant's bad reputation for truthfulness and veracity; (2) improperly restricting cross-examination of the complainant regarding possible bias or motive to testify falsely; and (3) admitting a prior incident involving an alleged sex act not shown to have been a crime.

The record on appeal indicates the following facts. The State presented the testimony of D.E., the complainant. D.E. testified that on July 15, 1986, he was a 15-year-old resident of Midlothian. D.E. indicated that on that day, after finishing work, he went to the First United Methodist Church in Harvey, where he took arts and crafts classes. D.E. indicated that between 3:30 and 4 p.m., he, defendant, who was a co-director of the church youth program, and defendant's two daughters left the church in defendant's van.

According to D.E., defendant dropped off the two daughters before proceeding to drive D.E. home. D.E. testified that he fell asleep in the captain's chair in the back of the van en route to his home. D.E. indicated that when he awoke, his jeans and underpants were down around his thighs, defendant had D.E.'s penis in his mouth, and a policeman was tapping on the side window of the van. D.E. pulled up his pants and exited from the back of van. D.E. indicated that he spoke with Sergeant Dirk Petry, telling him his name, age and what defendant had been doing to him. Thereafter, D.E. and Sergeant Petry went to the Posen police department.

During cross-examination, the trial court sustained the State's objections to defense questions regarding whether D.E. had ever been in trouble for telling a lie, whether defendant's wife had ever counseled D.E. about lying and whether defendant had ever criticized D.E. for entering defendant's daughter's bedroom.

Officer Scott Davis testified that on July 15, 1986, he received a dispatch at approximately 5:10 p.m. regarding a suspicious van at 2828 West 147th Street. Officer Davis testified that he and Sergeant Petry responded to the dispatch, meeting with John Merrick, the business and property owner at that address. After speaking with Merrick, the two officers approached defendant's van, which Officer Davis indicated was concealed in a bushy area. According to Officer Davis, the driver's side window was closed and no one was at the wheel, but that there was motion in the back of the van. Officer Davis indicated that he tapped on the window, whereupon defendant appeared from the back of the van. Officer Davis testified that defendant seemed very nervous when asked for his driver's license. Upon learning from Sergeant Petry that there might be a problem, Officer Davis asked defendant to follow him to the police station.

Sergeant Petry testified that as defendant appeared from the back of the van, he noticed someone else in the back of the van. Sergeant Petry asked this person, D.E., to step outside. Sergeant Petry indicated that he asked D.E. what was going on, and that D.E. stated that defendant was bothering him. Sergeant Petry indicated that he and D.E. had a conversation substantially similar to that described in D.E.'s testimony. Sergeant Petry testified that he notified Officer Davis of the possible problem and that everyone then went to the police station.

John Merrick testified that he was the president of Custom Plate Glass at 147th and Mozart Streets in Posen. Merrick testified that on July 15, 1986, at approximately 5 p.m., he observed a customized tan van turn onto Mozart, which is a dead-end street adjacent to his property. According to Merrick, he had observed the same van parked

on Mozart in front of the driveway at the rear of his property on January 15, 1986. On that date in January, Merrick walked down to the van, looked through the window and saw one man with his head in the lap of another. Merrick testified that the man's head was moving up and down. Merrick returned to his shop and told his wife to call the police. However, Merrick testified, he then saw the van driving away from the property. Merrick indicated that he observed the driver of the van and identified the driver as defendant. Merrick also testified that he contacted the police when he saw the van again on July 15, 1986.

At the close of the State's case, defendant moved for directed verdict; the trial court denied this motion. The trial court also considered the State's motion *in limine* to bar the testimony of four people who had testified at defendant's prior bench trial regarding D.E.'s reputation for truthfulness and veracity. Following argument, the trial court granted the motion as to three of the witnesses and denied it as to one of the witnesses.

Defendant called Steven Humphrey, assistant superintendent of schools for District 205, who testified that defendant worked at the Thornridge High School on January 15, 1986, from 7:30 a.m. to 3:30 p.m. Donald Bauc, who also worked at Thornridge High School, testified that he and defendant attended a council meeting from 3:30 to 4:55 p.m. Bauc testified that he did not know what defendant did after the meeting, but noted that Posen would have been more than 10 minutes away from Thornridge High School during rush hour. Defendant also produced several witnesses that testified to defendant's good character.

Following closing arguments and jury deliberations, defendant was found guilty of criminal sexual abuse. Defendant now appeals.

■ Defendant initially contends that the trial court erred in barring three witnesses from testifying that the complainant had a bad reputation for truthfulness and veracity. The record shows that defendant failed to specify this alleged error in his motion for a new trial. Generally, such a failure results in waiver on appeal. (See, *e.g.*, *People v. Caldwell* (1991), 218 Ill. App. 3d 1007, 1010, 579 N.E.2d 16, 18.) However, Illinois Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) provides that in an appeal of a criminal case, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The doctrine may be invoked where the defendant has waived an argument, but the evidence is closely balanced or the error adversely affected the defendant's right to a fair trial. (See *People v. Mullen* (1990), 141 Ill. 2d 394, 401-02, 566 N.E.2d 222, 226.) In this case, D.E. was the sole

witness to the offense. Thus, given the importance of the credibility of D.E.'s testimony, we turn to consider whether the trial court's ruling was plain error.

■ A witness may be impeached by testimony showing that he or she has a bad reputation for truthfulness and veracity. (*People v. Dorff* (1979), 77 Ill. App. 3d 882, 888, 396 N.E.2d 827, 831.) In order to preserve an objection to the exclusion of impeaching testimony, defendant must make an offer of proof. (*People v. Wright* (1992), 234 Ill. App. 3d 880, 894, 601 N.E.2d 817, 827.) Generally, such offers are formally presented in a question-and-answer format outside the presence of the jury; however, an informal offer of proof may suffice if it is specific and not based on speculation. *Wright*, 234 Ill. App. 3d at 894, 601 N.E.2d at 827.

An offer of proof regarding reputation testimony would include the foundation prerequisite to the admission of such evidence at trial. (See *In re Brooks* (1978), 63 Ill. App. 3d 328, 342, 379 N.E.2d 872, 883.) That foundation would show that the reputation witness not only has adequate knowledge of the person to be impeached, but also based such knowledge on contact with neighbors and associates of that person, rather than the personal opinion of the witness. (*Brooks*, 63 Ill. App. 3d at 342, 379 N.E.2d at 883.) The decision of whether a witness is sufficiently qualified to testify as to reputation rests within the sound discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *People v. Bingham* (1979), 75 Ill. App. 3d 418, 427, 394 N.E.2d 430, 437.

■ In this case, the State moved *in limine* to bar four witnesses that had testified at defendant's bench trial regarding D.E.'s reputation for truthfulness and veracity: Samantha Pace, Carlene Mooney, Wendy King and Willa Williams. The transcript of proceedings indicates that defense counsel sought to make an offer of proof as to these four persons. The transcript also shows that most of the argument at the hearing surrounded the law of reputation testimony, rather than a factual offer of proof. Defense counsel stated at one point that

> "Carla Boyd (ph.) will testify of his reputation in church. Samantha Pace was a former neighbor of [D.E.]. Denise Hubbard knew [D.E.] through church, Wendy Cane [*sic*]—."

The transcript shows that at this point the trial court interjected that it "remember[ed] the testimony quite clearly from the trial in this case. And to be quite candid ***, quite a bit of leeway was given to the bench trial ***."

On appeal, defendant's specific objection is that King, Boyd and Hubbard were improperly excluded simply because they knew D.E.

through church instead of as neighbors. It must first be noted that the record does not indicate that King knew D.E. through church and that defendant's brief focuses on the exclusion of Boyd and Hubbard. It must next be noted that the State's motion did not name Boyd or Hubbard and there is no indication from the parties or our review of the record that Boyd and Hubbard were witnesses at defendant's bench trial. It must also be noted that defendant has pointed to nothing outside the portion of the transcript quoted above regarding Boyd and Hubbard that could be considered an offer of proof.

Applying the principles discussed above, a formal offer of proof may not have been necessary as to Pace and King, as these two women testified at the bench trial and the record indicates that the trial court remembered the testimony given at that time. However, the offer made as to Boyd and Hubbard, who apparently were not witnesses at the bench trial, is inadequate for review of whether they had sufficient knowledge of D.E. and whether such knowledge was based on contact with associates instead of personal opinion. The trial court may, within its discretion, have concluded that the mere assertion that Boyd and Hubbard knew D.E. through church was an insufficient foundation to permit their testimony.

Moreover, assuming *arguendo* that a proper foundation could be laid, the record indicates that the trial court granted the State's motion not only because Boyd and Hubbard knew D.E. through church rather than through his neighborhood, but also because it believed the testimony to be cumulative. The transcript shows that the trial court told defense counsel that "we're not going to get into one of these common law situations where how many of your friends can you bring on to testify to that." A defendant is not necessarily denied a fair trial where a trial court excludes cumulative testimony regarding the victim's truthfulness and veracity, particularly where the defendant has failed to make an offer of proof as to the witnesses that would offer such testimony. *People v. Echols* (1986), 146 Ill. App. 3d 965, 974, 497 N.E.2d 321, 327.

It should be noted that the testimony barred here ultimately would not have been cumulative, as a review of the record indicates that Pace did not testify at trial. The record indicates that Pace was not present when called by defendant as his final witness. The record also shows, however, that the trial court delayed the proceedings twice, conducting an instructions conference and other proceedings outside the presence of the jury while waiting for Pace to arrive. After the second delay granted by the trial court, defendant rested his case and did not move for a continuance. Nor did defendant ask the

court to reconsider its earlier ruling barring the other witnesses. Indeed, on appeal, defendant does not claim that the trial court committed error regarding Pace.

Consequently, even with the benefit of hindsight that by definition was unavailable to the trial court, given the facts and circumstances presented in this appeal, we cannot conclude that the exclusion of three of four purported reputation witnesses constitutes plain error mandating reversal.

■ Defendant next argues that the trial court erred in restricting his cross-examination of D.E. regarding whether D.E. had ever been in trouble for telling a lie, whether defendant's wife had ever counseled D.E. about lying and whether defendant had ever criticized D.E. for entering defendant's daughter's bedroom. Again, defendant failed to specify this alleged error in his motion for a new trial, resulting in waiver on appeal.

■ Finally, defendant contends that the trial court erred in admitting John Merrick's testimony regarding the events of January 15, 1986. However, we rejected this contention in deciding defendant's prior appeal. (*Clauson*, 182 Ill. App. 3d at 275-76, 537 N.E.2d at 1052-54.) We conclude that the trial court did not abuse its discretion in admitting Merrick's testimony here for the reasons stated in our prior opinion.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.